# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RIVIAN, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> CHARLES L. NORMAN, in his official capacity as the Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles, <br><br> *Defendant*. | Case No. 2:25-cv-858 |

## COMPLAINT

Plaintiff Rivian, LLC brings this civil action for declaratory and injunctive relief, alleging as follows:

### NATURE OF THE ACTION

1. Rivian, LLC is an American automotive company that wants to sell its vehicles directly to consumers in Ohio, just like Apple sells iPhones and Tesla, Inc., sells Teslas. Rivian, LLC's subsidiary, Rivian Automotive, LLC, develops, designs, and manufactures electric vehicles in the United States, which Rivian, LLC then sells directly to consumers in states where it is licensed as a dealer to do so. This complaint will refer to both entities collectively as "Rivian." Rivian's first vehicle, the R1T, was launched in 2021 to widespread acclaim, including being recognized as the 2022 Motor Trend Truck of the Year. Like Tesla and other recent new entrants to the automotive market, Rivian sells its vehicles without using any independent franchised dealers. As such, new Rivian vehicles are exclusively available for purchase from Rivian through Rivian-operated dealer-licensed locations in states such as Kentucky, Illinois, Florida, Virginia, and Arizona.

2.  The State of Ohio takes the position that Ohio law bars Rivian from selling new Rivian vehicles in the state directly to Ohio consumers. In 2014, the Ohio Legislature enacted a bill providing that the Ohio Registrar of Motor Vehicles shall deny a motor vehicle dealers' license—which is required to sell vehicles in Ohio—to anyone who is "a manufacturer, or a parent company, subsidiary, or affiliated entity of a manufacturer, applying for a license to sell or lease new or used motor vehicles at retail." R.C. 4517.12(A)(11). At the same time, the Legislature enacted a special provision for Tesla that not only permitted Tesla to continue selling vehicles from two dealerships it already had in the state, but also to sell vehicles from an additional dealership. *See id.* This special provision does not apply to Rivian. As a result, Ohioans seeking to purchase Rivian vehicles must do so through Rivian's dealer-licensed locations in other states.

3.  The State of Ohio has no legitimate interest in blocking its citizens from purchasing vehicles through a Rivian-owned dealer-licensed location in Ohio. For purposes of dealer licensing, there is no rational basis for distinguishing between Rivian, LLC and independent franchised dealers. To the contrary, Ohio's prohibition of Rivian's direct-sales-only business model is irrational in the extreme: it reduces competition, decreases consumer choice, and drives up consumer costs and inconvenience—all of which harm consumers—with literally no countervailing benefit. And forcing Rivian vehicle sales to take place outside of Ohio's borders makes it more difficult, if not impossible, for state regulators to protect Ohio consumers. Ohio also allows other manufacturers, like Tesla, to sell their vehicles directly to consumers in Ohio. Ohio's prohibition is pure economic protectionism for the benefit of Ohio's existing auto dealers, putting their profits ahead of consumers.

4.  Ohio's prohibition also just makes no sense. Ohio allows manufacturers like Rivian to perform warranty service and other repairs on vehicles in Ohio, to rent vehicles to consumers in

2

Ohio, and even to sell new vehicles to Ohioans from out-of-state dealerships which can be delivered to Rivian service centers in Ohio. Nonsensically, the thing that Rivian cannot do is actually complete the sale of Rivian vehicles in Ohio. This imposes an extraordinary burden on Ohio consumers and Rivian for no legitimate reason.

5. Rivian, LLC brings this suit to vindicate its constitutional rights to be free from arbitrary government restrictions on its legitimate business activities and to vindicate Ohioans' interest in enjoying the benefits of a competitive marketplace for vehicles. As applied to Rivian, LLC, Ohio's prohibition of the direct-sales-only business model is unconstitutional. Rivian, LLC accordingly asks this Court to hold that Ohio's application of the prohibition to Rivian, LLC violates the U.S. Constitution's Due Process and Equal Protection Clauses, which will allow Rivian, LLC to compete on a level playing field for the business of Ohio consumers and give Ohio consumers the choice to buy a Rivian vehicle in the Buckeye State.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) because Rivian LLC's claims arise under the U.S. Constitution and 42 U.S.C. § 1983.

7. Rivian LLC's requests for declaratory and injunctive relief are authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; the All Writs Act, 28 U.S.C. § 1651; Rules 57 and 65 of the Federal Rules of Civil Procedure; and the Court's inherent equitable powers.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) and in this Division because the Defendant resides in this judicial District and Division and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District and Division.

3

## PARTIES

9. Plaintiff Rivian, LLC sells Rivian vehicles in states where it is licensed to do so. Rivian, LLC is a limited liability company formed in Delaware and headquartered in Irvine, California. Rivian vehicles are manufactured by Rivian Automotive, LLC, which is a wholly-owned subsidiary of Rivian, LLC. Rivian Automotive, Inc. is the ultimate parent company of both Rivian, LLC and Rivian Automotive, LLC.

10. Charles L. Norman is the Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles. He is sued in his official capacity only. The Ohio Bureau of Motor Vehicles is located in Columbus, Ohio.

## FACTUAL ALLEGATIONS

### Rivian's Business

11. Rivian is an American automotive company founded in 2009 that develops, builds, and sells category-defining electric vehicles.

12. Rivian released its first two vehicles for purchase in 2021, the R1T, a two-row, five-passenger electric pickup truck, and the R1S, a three-row, seven-passenger electric SUV. Upon their launch, the R1T and R1S were met with immediate acclaim. In December 2021, the R1T was named the Motor Trend Truck of the Year. The R1S has been designated by the Insurance Institute for Highway Safety (IIHS) as a "TOP SAFETY PICK+" since the 2023 model year, and the R1T has received similar IIHS accolades. In 2024, Rivian was named the Most Loved Car Brand by Consumer Reports. The Rivian R1S Tri-Motor was named Esquire's 2025 Car of the Year.

13. Rivian currently manufactures all R1 vehicles at its manufacturing facility in Normal, Illinois. Rivian is constructing a second manufacturing facility near the city of Social Circle, Georgia.

14. Rivian is a "direct-sales-only" automotive company. Rivian markets its vehicles directly to consumers through its website and a growing network of Rivian-operated stores. Unlike legacy automakers, Rivian does not have independent franchised dealers. Rivian, LLC is the exclusive sales entity for new Rivian vehicles. Rivian, LLC (or one of its subsidiaries) is a licensed dealer in sixteen states. Rivian sells its vehicles at uniform and transparent prices. There is no pressure and nothing to negotiate. Rivian also provides support and service, including warranty service, directly to owners of its vehicles. Rivian has no intention of ever entering into a franchise agreement with any independent dealer. As a result, requiring Rivian to sell vehicles through an independent dealer effectively bars Rivian from selling vehicles in Ohio.

15. Because of the Ohio law discussed below, Rivian does not currently have any dealer-licensed locations in Ohio. Ohio residents can and have ordered Rivian vehicles through a Rivian-operated out-of-state dealer-licensed location that sells directly to customers. Vehicles are typically delivered to a Rivian service center in Ohio or directly to the customer's home, where available. The customer then has to pay taxes and register the vehicle in Ohio.

16. Rivian has three service centers in Ohio where it performs warranty and other service work on Rivian vehicles owned by Ohio consumers.

### Ohio's Direct-Sales Prohibition

17. Ohio law requires that a business must be licensed to "[e]ngage in the business of displaying or selling at retail new motor vehicles." R.C. 4517.02(A)(1). Ohio law provides only certain grounds for denying a license, such as if the person "[h]as made any false statement of a material fact in the application," id. § 4517.12(A)(1), "[i]s of bad business repute or has habitually defaulted on financial obligations," id. § 4517.12(A)(3), has been convicted of certain crimes like sexual offenses or crimes of violence, id. § 4517.12(A)(5), or "[i]s insolvent," § 4517.12(A)(7).

5

18. On or around 2013, the Registrar of Motor Vehicles licensed Tesla as a motor vehicle dealer in the state, and Tesla opened two dealerships in Ohio. The Ohio Automobile Dealers Association ("OADA"), which represents independent franchised dealers in Ohio, unsuccessfully sued to get Tesla's licenses rescinded. Shortly thereafter, and to cut-off future competition, OADA lobbied the Ohio General Assembly to enact a law that would prohibit the direct-sales-only business model for every manufacturer but Tesla. OADA is one of the most politically powerful special-interest groups in Ohio, and OADA and its members donated hundreds of thousands of dollars to political campaigns and committees in Ohio to press this legislative priority.

19. OADA's campaign was effective. In 2014, the Ohio General Assembly passed Senate Bill 260, Ohio Legis. 104 (2014), 2014 Ohio Laws File 104 (Sub. S.B. 260), which amended R.C. 4517.12 to provide that the Registrar of Motor Vehicles "shall deny" a dealer's license to anyone who is "a manufacturer, or a parent company, subsidiary, or affiliated entity of a manufacturer, applying for a license to sell or lease new or used motor vehicles at retail." R.C. 4517.12(A)(11). This provision, only as applied to sales entities like Rivian, LLC that are affiliated with direct-sales-only automotive companies, is referred to herein as the "**Prohibition**."

20. At the same time that the General Assembly generally prohibited the direct-sales-only business model, it created a special carve-out for Tesla.[1] The provision specified that the 2014 amendment "shall not serve as a basis for the termination, revocation, or nonrenewal of a license granted prior to September 4, 2014," and further provided that nothing in the amendment "shall

---

[1] To be clear, Rivian does not claim that the Tesla provision is unconstitutional. Rivian claims that the Tesla provision, among other facts, demonstrates that the Prohibition is unconstitutional as applied to Rivian, and for that reason Rivian should be permitted to directly sell its vehicles in Ohio just like Tesla.

prohibit a manufacturer from…[o]wning, operating, or controlling not more than three licensed motor vehicle dealerships if, as of January 1, 2014, the manufacturer was selling or otherwise distributing its motor vehicles at an established place of business in this state." R.C. 4517.12(A)(11). Tesla is the only manufacturer that satisfies this provision, and this provision was created specifically for Tesla. A legislative report by the Ohio Legislative Service Commission explained that "[t]he bill permits Tesla to maintain the two dealerships it already operates in Ohio and to open a third in the future, but prohibits any other manufacturer from obtaining a dealer's license." Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement, Sub. 2014 S.B. 260 (Mar. 27, 2014). The Tesla carve-out is not a "grandfather" provision, as it permitted Tesla to open an *additional* dealership in Ohio.

21. Today, Ohio law permits manufacturers like Rivian to do practically anything other than sell vehicles in the state directly to consumers. For example, Rivian can and does service vehicles in Ohio, including performing warranty and customer-pay service; sell vehicle parts and accessories in Ohio; offer vehicle financing in Ohio; and assist customers with titling and registering their vehicles in Ohio. Rivian could rent vehicles to Ohio consumers. Rivian could auction vehicles to Ohio consumers. And Ohio law permits Rivian to deliver vehicles to Ohioans in Ohio that are sold through out-of-state dealer-licensed locations. The thing that Rivian cannot do is actually complete the sale of a Rivian vehicle in Ohio.

22. But for the Prohibition, Rivian, LLC would be licensed as a new motor vehicle dealer in Ohio and would sell new Rivian vehicles in Ohio directly to consumers. If Rivian, LLC obtains the relief sought in this lawsuit, it will take every step necessary to obtain an Ohio dealership license and sell its vehicles in Ohio directly to consumers. Rivian, LLC is ready and able to apply to undertake these activities in Ohio, as it has done these exact same things in the

7

states where it is licensed to sell new vehicles to consumers, and, as discussed above, it already does numerous other activities in Ohio to support its customers in the state.

### Ohio's Prohibition Furthers No Legitimate State Interest

23. As applied to dealers like Rivian, LLC that are affiliated with direct-sales-only automotive companies, the Prohibition is irrational in the extreme. The Prohibition furthers no legitimate state interest and in fact *frustrates* the state interests in consumer protection and consumer welfare. The Prohibition limits competition in the Ohio market for new motor vehicles to the detriment of Ohio consumers. It is pure economic protectionism for Ohio's existing motor vehicle dealers, which is not a legitimate state interest.

24. The only conceivable state interests that the State might assert to justify the Prohibition are consumer protection and welfare, competition, public health and safety, and protecting new motor vehicle dealers from unfair competition and business practices. For the reasons discussed below, the Prohibition does not advance any of these state interests.

25. The Prohibition does not advance any state interest in consumer protection, such as preventing unfair or deceptive trade practices. Whether a sales entity like Rivian, LLC is affiliated with a manufacturer has no rational relationship to consumer protection. Indeed, Ohio law expressly authorizes manufacturers to own and operate dealerships in certain circumstances. *E.g.*, R.C. 4517.12(A)(11)(a). Moreover, Ohio's laws protecting consumers from unfair or deceptive practices apply to all dealers, regardless of whether they are affiliated with a manufacturer, and thus already protect consumers. That includes specific provisions relating to vehicle dealers. R.C. 4517.20 (prohibiting dealers from engaging in certain business practices); R.C. 1345.71 *et seq.* (Ohio's Lemon Law). It also includes the state's laws generally prohibiting deceptive trade practices. R.C. 1345.01 *et seq.* (Ohio Consumer Sales Practices Act); R.C. 4165.01 *et seq.* (Ohio

8

Deceptive Trade Practices Act); *see also* Ohio Attorney General, Ohio Consumer Protection Laws ("The Ohio Attorney General has enforcement authority over more than 25 consumer protection laws.").[2]

26.   The Prohibition frustrates Ohio's ability to protect consumers by forcing Ohio residents to purchase the vehicles of direct-sales-only automotive companies like Rivian outside of the state's borders, where the state lacks the legal and practical ability to address deceptive or unfair practices. Out-of-state sales are not subject to Ohio's regulatory jurisdiction and are not susceptible to its enforcement jurisdiction. As a practical matter, it is, at best, more difficult for Ohio to conduct investigation of and enforcement against out-of-state sales. By channeling vehicle sales through out-of-state dealerships, the Prohibition undermines Ohio's ability to detect, investigate, prevent, and punish any unlawful practices stemming from those out-of-state sales.

27.   The Prohibition likewise does not advance consumer welfare. Whether a dealer like Rivian, LLC is affiliated with a manufacturer has no rational relationship to advancing consumer welfare. By forcing Ohio consumers to purchase new motor vehicles through Ohio middlemen, the Prohibition drives up the cost of new vehicles through a phenomenon that economists refer to as "double marginalization." Adding an additional company to the supply chain for vehicles adds an additional level of markup that the consumer bears the burden of paying. That, in turn, increases prices for consumers and reduces demand, both of which reduce consumer welfare. An analysis by the U.S. Department of Justice concluded that forcing manufacturers to sell through independent franchised dealers costs consumers an average of $2,225 per vehicle (in year 2000

---

[2] *Available at* https://www.ohioattorneygeneral.gov/consumerlaws.

dollars, which equates to over $4,200 today).[3] The Prohibition also decreases consumer choice by limiting consumers' options to purchase vehicles in Ohio only to independent franchised dealers. There are many aspects of the traditional franchise-dealer model that consumers dislike, such as having to haggle with the dealer over price and feeling taken advantage of by opaque pricing and dealer markups. The Prohibition forces consumers who want to purchase a vehicle in Ohio to participate in the franchised-dealer model—purchasing vehicles from a middleman—regardless of consumers' preferences. Furthermore, the Prohibition imposes additional expenses and inconveniences on consumers who purchase vehicles from direct-sales-only automotive companies by requiring those sales to take place out of state, away from where these consumers reside, and requiring that the risk of loss be transferred to the consumer out of state. The Prohibition does not aid consumers; it injures them. In short, by requiring manufacturers to interpose a middleman between themselves and consumers, the Prohibition drives up costs and prices paid by consumers and undermines customer experience, all to the detriment of consumer welfare.

28. The Prohibition also does not prevent anticompetitive conduct. The Prohibition does not advance any legitimate state interest related to preventing monopolization or other potential abuses of market power. Any concern that a vertically integrated manufacturer may attempt to leverage its dominance in one line of business to establish dominance in another line of business is not implicated merely by a manufacturer selling its own product. Moreover, the U.S. automotive industry is highly competitive, with over forty brands of vehicles being sold. A manufacturer's decision to sell its own vehicles accordingly poses no risk to competition or any

---

[3] DOJ, Economic Analysis Group, Competition Advocacy Paper, Economic Effects of State Bans on Direct Manufacturer Sales to Car Buyers 4 (May 2009), *available at* https://www.justice.gov/atr/public/eag/246374.pdf.

10

other concern relating to vertical integration. The Prohibition does not even prevent vertical integration in the automotive industry given all of the activities that manufacturers are permitted to do in Ohio. The Prohibition is nothing but a restraint of trade that decreases competition by limiting access of new market entrants like Rivian. Increasing competition benefits consumers by giving them more choices, improving quality (including quality of service), and reducing prices. The Prohibition, which reduces competition, has the opposite effects.

29. The Prohibition does not advance any state interest in public health and safety. Whether a dealer is affiliated with a manufacturer has no rational relationship to public health or safety. All Ohio laws and federal laws addressing public health or safety apply equally, regardless of whether a dealer is affiliated with a manufacturer.

30. The Prohibition has no rational relationship to any state interest in protecting independent franchised dealers from unfair competition, impositions, or unfair business practices by the manufacturers whose vehicles they market. Historically, Ohio and other states have regulated the relationship between manufacturers and their independent franchised dealers to ensure that manufacturers treat their independent franchised dealers fairly—such as by limiting manufacturers' ability to issue new franchises within the market areas of their existing dealers. No legitimate state interest supports extending these state laws to direct-sales-only automotive companies like Rivian, which have no independent franchised dealers, and thus no competitive-power imbalance or manufacturer-franchisee relationship for the state to regulate. And there is nothing unfair about Rivian selling its own vehicles to consumers in Ohio without using any middlemen, as Ohio already permits certain manufacturers to do.

31. Moreover, Ohio law recognizes that there is nothing inherently special about a franchise agreement and that such agreements are unnecessary, in and of themselves, to achieve

any legitimate state interests with respect to direct-sales-only automotive companies. It is illogical for Ohio to prohibit companies like Rivian from selling new vehicles in Ohio directly to consumers when it lets manufacturers service vehicles (including providing warranty service) and even sell new vehicles directly to Ohio consumers through out-of-state manufacturer-owned dealerships. And for certain manufacturers of new vehicles like Tesla, Ohio law does not require a dealer to enter into a franchise agreement with a manufacturer. R.C. 4517.12(A)(11)(a). Nor does Ohio impose comparable restrictions requiring manufacturers of other products, such as motor home manufacturers, to sell only through middlemen.

32. Dealers affiliated with direct-sales-only automotive companies like Rivian, LLC and independent dealers are similarly situated for purposes of the Prohibition because they seek to engage in the same business—selling new motor vehicles to Ohio consumers from established physical locations in the state—subject to the same federal, state, and local regulation of their operations. Ohio has no rational basis to distinguish between dealers affiliated with direct-sales-only automotive companies like Rivian, LLC and the independent dealers that it permits to own and operate motor vehicle dealerships. Ohio also has no rational basis to distinguish between dealers affiliated with direct-sales-only automotive companies like Rivian, LLC and a manufacturer like Tesla that is allowed to sell vehicles in Ohio directly to consumers.

33. The anti-competitive, anti-consumer nature of direct-sales bans has been widely recognized. Federal Trade Commission ("FTC") officials have determined that state prohibitions on direct sales by motor vehicle manufacturers reduce competition and harm consumers, and that there is no rationale for applying such prohibitions to automotive companies, like Rivian, that have

no independent franchised dealers.[4] The position of the FTC's Directors of Bureaus of Economics and Competition and Office of Policy Planning is clear: "States should allow consumers to choose not only the cars they buy, but also how they buy them."[5] Also clear is their view that blanket prohibitions like Ohio's Prohibition only injure consumers and have no offsetting justification:

> FTC staff supports the movement to allow for direct sales to consumers.… Blanket prohibitions on direct manufacturer sales to consumers are an anomaly within the larger economy. Most manufacturers and suppliers in other industries make decisions about how to design their distribution systems based on their own business considerations, responding to consumer demand. Many manufacturers choose some combination of direct sales and sales through independent retailers. Typically, no government intervention is needed to augment or alter these competitive dynamics—the market polices inefficient, unresponsive, or otherwise inadequate distribution practices on its own. If the government does intervene, it should adopt restrictions that are clearly linked to specific policy objectives that the legislature believes warrant deviation from the beneficial pressures of competition, and should be no broader than necessary to achieve those objectives.… Protecting dealers from abuses by manufacturers does not justify a blanket prohibition [that] extends to all vehicle manufacturers, even those…who have no interest in entering into a franchise agreement with any dealer.[6]

34. Similarly, in a 2021 open letter, dozens of scholars in economics, competition policy, market regulation, industrial organization, and related fields called on state laws "prohibiting car companies from selling their cars directly to consumers" to "be amended to permit

---

[4] *See, e.g.*, FTC, Letter to Michigan Senator Darwin L. Booher, May 7, 2015, *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/ftc-staff-comment-regarding-michigan-senate-bill-268-which-would-create-limited-exception-current/150511michiganautocycle.pdf; FTC, Press Release, FTC Staff: Missouri and New Jersey Should Repeal Their Prohibitions on Direct-to-Consumer Auto Sales by Manufacturers, May 16, 2014, *available at* https://www.ftc.gov/news-events/news/press-releases/2014/05/ftc-staff-missouri-new-jersey-should-repeal-their-prohibitions-direct-consumer-auto-sales.

[5] FTC, Direct-to-consumer auto sales: It's not just about Tesla, May 11, 2015, *available at* https://www.ftc.gov/enforcement/competition-matters/2015/05/direct-consumer-auto-sales-its-not-just-about-tesla.

[6] *Id*.

direct sales and service of electric vehicles."[7] Such laws, they found, have "a variety of negative consequences," including "interfering with manufacturers' freedom to experiment with new distribution models for new technologies and market conditions, thus reducing the competitiveness of the U.S. EV industry and advantaging foreign competitors;" "interfering with consumers' freedom to decide how they will purchase cars;" and "interfering with free and functioning markets to privilege economic special interests."[8] "Prohibiting direct distribution of EVs," they explained, "is not supported by legitimate public policy objectives…. [T]he original concerns that animated the direct distribution prohibitions—protecting a franchisee from its own franchisor—do not apply to a company that is not using franchisees."[9] And "the argument that adding a mandatory layer of costs between the manufacturer and the consumer will reduce consumer prices has no basis in economics. There is no credible consumer protection argument in favor of prohibiting direct distribution."[10] This conclusion is shared by the Consumer Federation of America, Consumer Action, Consumers for Auto Reliability and Safety, and the American Antitrust Institute, all of which have concluded that direct sales bans injure consumers.

35. Another group of scholars in industrial organization, distribution, competition, intellectual property, innovation, and related fields reached the same conclusion in a 2014 letter addressing New Jersey's prohibition on direct sales by manufacturers without franchised dealers. They explained:

---

[7] Open Letter by Academics in Favor of Direct EV Sales and Service, Apr. 14, 2021, *available at* https://laweconcenter.org/wp-content/uploads/2021/04/Direct-Sales-Nationwide-Academics-Letter-4.14.pdf.

[8] *Id*.

[9] *Id*.

[10] *Id*.

> There is no justification on any rational economic or public policy grounds for such a restraint of commerce. Rather, the upshot of the regulation is to reduce competition in New Jersey's automobile market for the benefit of its auto dealers and to the detriment of its consumers. It is protectionism for auto dealers, pure and simple.[11]

36. The same is true of Ohio's Prohibition. It is "protectionism for auto dealers, pure and simple."[12]

## CLAIMS FOR RELIEF

### Count I

### U.S. Const., Amend. XIV, Due Process Clause

37. Plaintiff hereby incorporates the preceding allegations as if fully set forth herein.

38. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects every person's right to pursue legitimate business subject only to regulations that are rationally related to the advancement of a legitimate governmental interest.

39. The Prohibition infringes Plaintiff's right to pursue legitimate business because it forecloses Plaintiff from conducting its business of selling Rivian vehicles to consumers in Ohio.

40. Economic protection of a particular industry, like independent franchised dealers, is not a legitimate governmental interest.

41. Application of Ohio's Prohibition to Plaintiff is not rationally related to the advancement of any legitimate governmental interest.

42. Accordingly, as applied to Plaintiff, Ohio's Prohibition violates Plaintiff's rights under the Due Process Clause.

---

[11] Letter to Governor Chris Christie from the International Center for Law & Economics, Mar. 26, 2014, *available at* https://law.wm.edu/documents/Tesla_letter.pdf.

[12] *Id.*

43. Plaintiff asks this Court to declare that Ohio's Prohibition violates Plaintiff's rights under the Due Process Clause.

44. Plaintiff further asks this Court to issue a permanent injunction to enforce its declaratory judgment prohibiting Defendant from enforcing the Prohibition against Plaintiff. Unless Defendant is enjoined from this violation of Plaintiff's rights, Plaintiff will continue to suffer great and irreparable injury. An injunction would serve the public interest by increasing competition and consumer choice and eliminating the expense and burdens associated with the Prohibition.

## Count II

### U.S. Const., Amend. XIV, Equal Protection Clause

45. Plaintiff hereby incorporates the preceding allegations as if fully set forth herein.

46. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution protects every person's right to be free from arbitrary classifications by state government.

47. Economic protection of a particular industry, like existing motor vehicle dealers, is not a valid basis that justifies differential treatment.

48. Ohio's Prohibition infringes Plaintiff's rights by subjecting it to arbitrary classifications.

49. By prohibiting dealers like Plaintiff that are sales affiliates of manufacturers without independent franchised dealers from selling new motor vehicles in Ohio, Ohio's Prohibition arbitrarily distinguishes between classes that are similarly situated in all material respects because they all want to engage in the business of selling new motor vehicles to Ohio consumers from established physical locations in the state. The Prohibition arbitrarily distinguishes between similarly situated entities in three separate ways:

  a. The Prohibition arbitrarily distinguishes between (i) dealers affiliated with manufacturers without independent franchised dealers that Ohio does not permit to sell new motor vehicles to Ohio consumers from established physical locations in the state and (ii) independent dealers that Ohio permits to sell new motor vehicles to Ohio consumers from established physical locations in the state;

  b. The Prohibition arbitrarily distinguishes between (i) dealers affiliated with manufacturers without independent franchised dealers that Ohio does not permit to sell new motor vehicles to Ohio consumers from established physical locations in the state and (ii) manufacturers and their sales affiliates whom Ohio law permits to sell new motor vehicles to Ohio consumers from established physical locations in the state; and

  c. The Prohibition arbitrarily distinguishes between (i) manufacturers without independent franchised dealers and their sales affiliates whose vehicles Ohio does not permit to be sold to consumers from established physical locations in the state and (ii) manufacturers with independent franchised dealers and their sales affiliates whose vehicles Ohio permits to be sold to consumers from established physical locations in the state.

50. Accordingly, as applied to Plaintiff, Ohio's Prohibition violates Plaintiff's rights under the Equal Protection Clause.

51. Plaintiff asks this Court to declare that Ohio's Prohibition violates Plaintiff's rights under the Equal Protection Clause.

52. Plaintiff further asks this Court to issue a permanent injunction to enforce its declaratory judgment prohibiting Defendant from enforcing the Prohibition against Plaintiff. Unless Defendant is enjoined from this violation of Plaintiff's rights, Plaintiff will continue to suffer great and irreparable injury. An injunction would serve the public interest by increasing

competition and consumer choice and eliminating the expense and burdens associated with the Prohibition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. For entry of judgment declaring that Ohio's Prohibition is unconstitutional as applied to Plaintiff and a permanent injunction prohibiting Defendant from enforcing the Prohibition against Plaintiff;

B. For an award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

C. For such further legal and equitable relief as the Court may deem just and proper.

Dated: August 4, 2025

Respectfully submitted,

*/s/ Patrick T. Lewis*

Billy M. Donley*
bdonley@bakerlaw.com
William P. Geise*
wgeise@bakerlaw.com
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
Telephone: (713) 751-1600

* *Pro hac vice* application forthcoming

Patrick T. Lewis (0078314)
plewis@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 861-7096

Andrew M. Grossman*
agrossman@bakerlaw.com
Kristin A. Shapiro*
kshapiro@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 816-1697

*Attorneys for Plaintiff*