## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **RIVIAN, LLC**, | |
| *Plaintiff*, | Case No. 2:25-cv-00858 |
| v. | Judge Michael H. Watson |
| **CHARLES L. NORMAN**, in his official capacity as the Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles, | Magistrate Judge Chelsea M. Vascura |
| | **ORAL ARGUMENT REQUESTED** |
| *Defendant*. | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Rivian, LLC ("Rivian") hereby moves for summary judgment on its claims pursuant to Federal Rule of Civil Procedure 56. The reasons for this motion are set forth in the attached memorandum.

Rivian respectfully requests oral argument on its Motion pursuant to Loc. Civ. R. 7.1(b)(2) because the case raises weighty constitutional questions arising out of Ohio's prohibition on manufacturer-direct sales of motor vehicles to Ohio consumers, which is an issue of significant public importance given the size of Ohio's motor vehicle market.

Date: May 29, 2026

Billy M. Donley*
William P. Geise*
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
Tel.: (713) 751-1600
bdonley@bakerlaw.com
wgeise@bakerlaw.com

Respectfully submitted,

*/s/ Patrick T. Lewis*
Patrick T. Lewis (0078314) (*Trial Attorney*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel.: (216) 621-0200 / Fax: (216) 696-0740
plewis@bakerlaw.com

* Admitted *pro hac vice*

Andrew M. Grossman*
Kristin A. Shapiro*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Tel.: (202) 816-1697
agrossman@bakerlaw.com
kshapiro@bakerlaw.com

*Counsel for Plaintiff, Rivian LLC*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND AND STATEMENT OF MATERIAL FACTS.................................................. 2

    I.    Rivian's Direct-Sales-Only Business Model ......................................................... 2

    II.   Ohio's Prohibition........................................................................................... 4

    III.  Procedural History .......................................................................................... 6

SUMMARY JUDGMENT STANDARD ................................................................................ 6

ARGUMENT...................................................................................................................... 7

    I.    The Prohibition Violates Rivian's Due Process Rights ....................................... 7

      A. Rivian Has a Protected Interest ...................................................................... 7

      B. The Prohibition Lacks a Rational Basis ........................................................ 7

    II.   The Prohibition Violates Rivian's Equal Protection Rights ............................. 18

      A. Rivian Is Similarly Situated to Existing Ohio Dealers ...................................... 19

      B. Ohio's Disparate Treatment of Rivian Lacks a Rational Basis ....................... 19

    III.  The Laches Doctrine Does Not Bar Relief ...................................................... 20

CONCLUSION.................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allgeyer v. State of La.*,
  165 U.S. 578 (1897)......................................................................................................7

*Am. Exp. Travel Related Servs. Co. v. Kentucky*,
  641 F.3d 685 (6th Cir. 2011) ......................................................................................7

*Block v. Canepa*,
  No. 25-3305, 2026 WL 1243383 (6th Cir. May 6, 2026).........................................12

*Boone v. Spurgess*,
  385 F.3d 923 (6th Cir. 2004) ....................................................................................19

*Craigmiles v. Giles*,
  312 F.3d 220 (6th Cir. 2002) ............................................................................ *passim*

*Dent v. State of W.Va.*,
  129 U.S. 114 (1889)....................................................................................................7

*EJS Props., LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir. 2012) .................................................................................7, 19

*General Motors Corp. v. Romein*,
  503 U.S. 181 (1992)....................................................................................................7

*Jackson v. Jamrog*,
  411 F.3d 615 (6th Cir. 2005) ....................................................................................19

*Med Corp. v. City of Lima*,
  296 F.3d 404 (6th Cir. 2002) ......................................................................................7

*New Motor Vehicle Board v. Orrin W. Fox Co.*,
  439 U.S. 96 (1978)......................................................................................................4

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992)......................................................................................................19

*Ohio A. Philip Randolph Inst. v. Smith*,
  335 F. Supp. 3d 988 (S.D. Ohio 2018) ....................................................................20

*St. Joseph Abbey v. Castille*,
  712 F.3d 215 (5th Cir. 2013) .................................................................................12, 16

*Tesla, Inc. v. Louisiana Auto. Dealers Ass'n*,
113 F.4th 511 (5th Cir. 2024) ................................................................................17

*Tiwari v. Friedlander*,
26 F.4th 355 (6th Cir. 2022) ..............................................................................7, 19

**Statutes**

49 U.S.C. §§ 30111 .....................................................................................................10

2014 Ohio Laws 104 (Sub. S.B. 160) .........................................................................4

R.C. 4517.01 ...............................................................................................................6

R.C. 4517.02 ..........................................................................................................4, 6

R.C. 4517.011 ...................................................................................................... *passim*

R.C. 4517.12 .......................................................................................................4, 5, 6

R.C. 4517.50 .............................................................................................................12

R.C. 4517.55 .........................................................................................................13, 16

R.C. 4517.56 .............................................................................................................13

R.C. 4517.59 .............................................................................................................12

**Other Authorities**

Daniel A. Crane, *Tesla, Dealer Franchise Laws, and the Politics of Crony
Capitalism*, 101 Iowa L. Rev. 573 (2016) ...............................................................3

Federal Rule of Civil Procedure 56 .............................................................................1

**INTRODUCTION**

Rivian is an automotive company that wants to sell its electric vehicles directly to Ohio consumers, just like Apple sells iPhones and Tesla sells Teslas.[1] But Ohio law prohibits it from doing so, requiring motor vehicle manufacturers and their affiliates (except for Tesla) to sell through independent franchised dealers. As applied to direct-sales-only automotive companies like Rivian, this prohibition is irrational in the extreme: it undermines competition and consumer protection, reduces consumer choice, and drives up costs, with no countervailing benefit. Ohio allows Rivian to do most of the things that independent dealers do, including performing warranty service, selling vehicle parts and accessories, and even selling vehicles to Ohioans from out-of-state dealerships and delivering them to customers in Ohio. What Rivian cannot do is sell Rivian vehicles in Ohio. That prohibition makes no sense. It is an outright restraint of trade that puts dealer profits ahead of the interests of Ohio citizens and even those of the State itself.

Ohio's prohibition is indistinguishable from the Tennessee law requiring caskets to be sold through licensed funeral directors that the Sixth Circuit invalidated in *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002). Both laws prohibited plaintiffs from selling products (vehicles and caskets, respectively) in the state because they weren't part of the state-protected club of dealers. Both laws were divorced from any legitimate concern about public safety or consumer protection. Both laws irrationally hurt consumers by restricting competition. And ultimately, both laws had no conceivable purpose besides protecting an incumbent industry from competition by restricting new market entrants. As the Sixth Circuit held, "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Id.* at 224.

---

[1] Plaintiff Rivian, LLC sells Rivian vehicles, and its subsidiary Rivian Automotive, LLC manufacturers them. Ex. A at ¶ 4. For ease of reference, this memorandum refers to both entities collectively as "Rivian."

Ohio's prohibition is even more patently irrational than the Tennessee casket law for two reasons. First, unlike in *Craigmiles*, here Defendant has twice admitted in discovery that *it is unaware of any facts supporting its contention that the prohibition is rationally related to any legitimate state interest*. Second, and consistent with the lack of any legitimate state interest, at the same time the General Assembly enacted the direct-sales prohibition, it carved out an exception for Tesla, another direct-sales-only automotive company. The Tesla exception belies any assertion that the prohibition is necessary for public safety, consumer protection, or anything else.

Ohio consumers deserve to enjoy the full benefits of a competitive market for motor vehicles. And Rivian has a right to bring its electric vehicles to market in the Buckeye State and compete with the incumbent dealers. Ohio's prohibition is unconstitutional, and Rivian is therefore entitled to summary judgment.

## BACKGROUND AND STATEMENT OF MATERIAL FACTS

### I. Rivian's Direct-Sales-Only Business Model

Rivian is an American automotive company founded in 2009. Ex. A ¶ 5. Rivian, LLC's subsidiary, Rivian Automotive, LLC, develops and manufactures Rivian-branded electric vehicles, which Rivian, LLC then sells directly to consumers in states where it is licensed as a dealer. *Id.* ¶¶ 5, 10. Rivian released its first two vehicles in 2021: the R1T, a two-row, five-passenger electric pickup truck, and the R1S, a three-row, seven-passenger electric SUV, which were met with immediate acclaim. *Id.* ¶ 6. Rivian currently manufactures its vehicles at its facility in Normal, Illinois, and it is constructing a second facility in Georgia. *Id.* ¶ 7.

Rivian is a "direct-sales-only" automotive company. *Id.* ¶ 10. Plaintiff Rivian, LLC is the sales entity for new Rivian vehicles, which it markets through a growing network of Rivian-operated showrooms. *See id.* ¶ 10–11. Unlike legacy automakers, Rivian does not have

independent dealers. *Id.* ¶ 10. Rivian, LLC (or a subsidiary) is a licensed dealer in eighteen states. *Id.* ¶ 10. Rivian sells its vehicles at uniform and transparent prices—there is no pressure, no haggling, and nothing to negotiate. *Id.* ¶ 11. Rivian also directly provides support and service, including warranty service, to owners through a robust network of service facilities and mobile support units. *See id.* ¶ 10, 15.

The direct-sales business model is critical to Rivian, and the broader electric-vehicle industry more generally, given the economics of electric-vehicle sales. *See id.* ¶ 14; *see generally* Daniel A. Crane, *Tesla, Dealer Franchise Laws, and the Politics of Crony Capitalism*, 101 Iowa L. Rev. 573, 580–82 (2016). Among other problems, independent dealers tend to steer consumers away from purchasing electric vehicles because they require less service than gasoline-powered vehicles, and vehicle service is a key profit center for independent dealers. *See* Ex. B at 30. Selling directly saves consumers thousands of dollars per vehicle by improving efficiency and avoiding unnecessary markups added by independent dealers. *See* Ex. B at 12; Ex. E at 4; Ex. F at 6–8. It also enables Rivian to provide a low-pressure sales environment focused on consumer education. *See* Ex. A ¶ 11. Unlike independent dealers, Rivian sales employees are paid primarily through hourly wages or a salary and are not incentivized through sales quotas to pressure a customer to buy a vehicle. *See id.* ¶ 11.

Rivian currently has three repair-licensed service centers in Ohio. *Id.* ¶ 17. Because of prohibition, however, Rivian does not have any dealer-licensed location in Ohio at which it can sell its vehicles *Id.* ¶ 21. Instead, Ohio residents can order Rivian vehicles online from Rivian's out-of-state dealer-licensed locations. *Id.* ¶ 19. Vehicles are typically delivered to one of Rivian's Ohio service centers or the customer's home. *Id.* ¶ 19. Rivian has sold or shipped over 1,800 new

3

vehicles into Ohio. *Id.* ¶ 16. But for the Prohibition, Rivian, LLC would obtain an Ohio dealer's license, and it would sell Rivian vehicles in Ohio directly to consumers. *Id.* ¶ 21.

## II. Ohio's Prohibition

Ohio law requires a business to be licensed to "[e]ngage in the business of displaying or selling at retail new motor vehicles." R.C. 4517.02(A)(1). It provides only certain grounds for denying a dealer license, such as if the person "[h]as made any false statement of a material fact in the application," *id.* § 4517.12(A)(1), "[i]s of bad business repute or has habitually defaulted on financial obligations," *id.* § 4517.12(A)(3), has been convicted of certain crimes like sexual offenses or crimes of violence, *id.* § 4517.12(A)(5), or "[i]s insolvent," *id.* § 4517.12(A)(7).

In 2013, the Ohio Registrar of Motor Vehicles ("Registrar") licensed Tesla as a dealer, and Tesla opened two Ohio dealerships. *See* Ex. D at 118, 122–24. The Ohio Automobile Dealers Association ("OADA"), which represents independent franchised dealers, unsuccessfully sued to get those licenses rescinded. *See* Ex. G at 3; Ex. H at 1–2. Shortly thereafter, OADA lobbied the General Assembly to pass a law that would prohibit the direct-sales business model for every manufacturer but Tesla. *See* Ex. I at 11–12. OADA is one of Ohio's most powerful interest groups, and OADA and its members donated hundreds of thousands of dollars to political campaigns and committees to press this legislative priority. *See* Ex. J at 2–3.

OADA's campaign was effective. In 2014, the General Assembly passed Senate Bill 260, Ohio Legis. 104 (2014), 2014 Ohio Laws File 104 (Sub. S.B. 260), which amended R.C. 4517.12 to provide that the Registrar "shall deny" a dealer license to anyone who is "a manufacturer, or a parent company, subsidiary, or affiliated entity of a manufacturer." R.C. 4517.12(A)(11). While many states prevent traditional manufacturers with independent franchised dealers from selling vehicles in unfair competition with their own franchisees, *see generally New Motor Vehicle Board*

4

*v. Orrin W. Fox Co.*, 439 U.S. 96, 100–01, 101 (1978) (describing state franchise statutes designed to address "[t]he disparity in bargaining power between automobile manufacturers and their dealers"), R.C. 4517.12(A)(11) extends to manufacturers like Rivian which do not have any independent franchised dealers. This provision, only as applied to direct-sales-only automotive companies like Rivian, is referred to herein as the "**Prohibition**."

At the same time it prohibited the direct-sales business model, the General Assembly created a special carve-out for Tesla. The Tesla provision specifies that the 2014 amendment does not "prohibit a manufacturer from … [o]wning, operating, or controlling not more than three licensed motor vehicle dealerships if, as of January 1, 2014, the manufacturer was selling … its motor vehicles at an established place of business in this state." R.C. 4517.12(A)(11)(a). Tesla is the only manufacturer that satisfies this provision. An Ohio Legislative Service Commission report explained that "[t]he bill permits Tesla to maintain the two dealerships it already operates in Ohio and to open a third in the future." Ex. K at 1; Ex. I at 8. This is not a grandfather provision, as it permitted Tesla to open an *additional* dealership, which Tesla subsequently did. Ex. D at 126. Pursuant to its three dealer licenses, Tesla can sell an unlimited number of new vehicles in Ohio. *Id.* at 133–34.

The Prohibition is exceedingly narrow. Ohio law permits manufacturers like Rivian to do practically anything that a dealer can do other than sell vehicles in the state. For example, Rivian is licensed to and does service vehicles in Ohio, including performing warranty service. Exs. L–N; Ex. A ¶ 17. Rivian also can and does sell vehicle parts and accessories in Ohio, offer vehicle financing to Ohio consumers, and assist customers with titling and registering their vehicles in Ohio. Ex. A ¶ 18. Rivian could rent and auction vehicles to Ohio consumers. *See* R.C. 4517.12(A)(11) (prohibiting manufacturers from obtaining a dealer license "to sell or lease new or

5

used motor vehicles at retail"); R.C. 4517.01(M) (defining "motor vehicle leasing dealer" to include only a "contractual arrangement under which a charge is made for its use at a periodic rate for a term of thirty days or more"); R.C. 4517.02 (distinguishing between licensing for vehicle dealers and vehicle auctioneers, and specifying that the former category of license is for "selling at retail new motor vehicles"). And Rivian can even sell vehicles to Ohio consumers from its out-of-state dealerships and deliver those vehicles to consumers in Ohio. Ex. A ¶ 16.

## III. Procedural History

On August 4, 2025, Rivian filed the instant Complaint against Charles L. Norman, in his official capacity as Registrar, challenging the constitutionality of the Prohibition. *See* ECF No. 1. Rivian alleges that the Prohibition, only as applied to direct-sales-only automotive companies like Rivian, violates the Due Process Clause (Count I) and the Equal Protection Clause (Count II) of the Fourteenth Amendment of the U.S. Constitution. Rivian does not challenge section 4517.12(A)(11)'s facial validity or its application to traditional manufacturers with independent dealers, nor does Rivian challenge any regulatory requirement applicable to licensed dealers. The Complaint seeks declaratory and injunctive relief. *Id.* at 18. Defendant subsequently filed an Answer, which asserted the affirmative defense of laches. ECF No. 17 at 9. The parties have completed discovery pursuant to the Court's preliminary pretrial order.

### SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if … there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**ARGUMENT**

## I.   The Prohibition Violates Rivian's Due Process Rights

Rivian is entitled to summary judgment on its due process claim (Count I). The Fourteenth Amendment's Due Process Clause protects the right to engage in lawful business activity free from irrational regulation. Accordingly, economic regulation must meet the "test of due process: a legitimate legislative purpose furthered by rational means." *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) (quotation marks omitted); *see Craigmiles*, 312 F.3d at 223.

### A. Rivian Has a Protected Interest

Because Rivian's due process claim challenges a state law as unconstitutional, Rivian need not demonstrate that the Prohibition deprives it of a protected interest. *See Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688–89 (6th Cir. 2011) ("Though a plaintiff must demonstrate a deprivation of a constitutionally protected … interest in order to establish a due process violation based on discretionary conduct of government officials, such a showing is not necessary to establish that a state law is unconstitutional." (citations omitted)). Regardless, the Prohibition plainly deprives Rivian of its liberty interest in "the right to engage in a chosen occupation," *Tiwari v. Friedlander*, 26 F.4th 355, 360 (6th Cir. 2022), and its property interest in obtaining a "license to practice one's calling or profession," *Med Corp. v. City of Lima*, 296 F.3d 404, 411 (6th Cir. 2002); *see also Dent v. State of W.Va.*, 129 U.S. 114, 121 (1889); *Allgeyer v. State of La.*, 165 U.S. 578, 589 (1897). It also deprives Rivian of the "right to contract" and sell its property. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 859 (6th Cir. 2012).

### B. The Prohibition Lacks a Rational Basis

Rational basis review requires laws to "bear some rational relation to a legitimate state interest." *Craigmiles*, 312 F.3d at 223. "Those seeking to invalidate a statute using rational basis

7

review must negative every conceivable basis that might support it." *Id.* at 224 (quotation marks omitted). While deferential, rational basis review "is not toothless." *Id.* at 229 (quotation marks omitted). In *Craigmiles*, the Sixth Circuit invalidated a Tennessee law providing that only licensed funeral directors may sell caskets, explaining that the law "was nothing more than an attempt to prevent economic competition," and the state's "justifications for the [law] come close to striking us with the force of a five-week-old, unrefrigerated dead fish." *Id.* at 225 (quotation marks omitted). Defendant's justifications for the Prohibition here are equally pungent.

Indeed, Defendant has admitted that it is unaware of *any* facts suggesting that the Prohibition is rationally related to a legitimate state interest. Defendant contends that the Prohibition advances the following interests:

> Defendant refers to Ohio Rev. Code § 4517.011(A), including its subdivisions (1)–(5). Further answering, Defendant states that Ohioans have reliance interests tied up in maintaining Ohio's "comprehensive plan" for the "distribution and sale of motor vehicles." Ohio Rev. Code § 4517.011(B). The Prohibition advances public safety and consumer welfare. The Prohibition encourages competition, provides a ready recourse for consumers to address recalls, repairs, and warranties, and insulates consumers against manufacturer failure or insolvency.

Ex. C at 3.[2] But in response to an interrogatory asking Defendant to "identify all facts" supporting its contention that the Prohibition is relationally related to these interests, Defendant stated that it "is not aware of any specific facts." *Id.* at 3–4. Furthermore, Defendant's agency representative testified in a Rule 30(b)(6) deposition that Defendant is not "aware of any governmental interest the prohibition advances or serves," Ex. D at 53–55, 68–69; Ex. O at 1–2, nor aware of "any facts indicating that the prohibition furthers any of the purported governmental interests that are set forth in this interrogatory response," Ex. D at 138–40. Defendant is not aware of any such facts because

---

[2] R.C. 4517.011(A) only codifies a general statement of intent for Chapter 4517 and does not address the Prohibition. Moreover, as shown below the Prohibition only undermines and does not advance the interests identified in R.C. 4517.011(A).

there are none. Blocking new market entrants from Ohio's motor vehicle market, while imposing additional expense and inconvenience on consumers, plainly does not advance consumer welfare, competition, or any other legitimate interest—it does exactly the opposite.

1. *The Prohibition Is Unrelated to Any Reliance Interests in Maintaining a "Comprehensive Plan" for Vehicle Distribution and Sales*

Defendant asserted that the Prohibition is rationally related to Ohioans' "reliance interests tied up in maintaining Ohio's 'comprehensive plan' for the 'distribution and sale of motor vehicles.'" Ex. C at 3 (quoting R.C. 4517.011(B)). It is unclear what this asserted interest even means. If Rivian obtains the relief sought in this lawsuit, Ohio will still have a "comprehensive plan" that requires licensure and regulation of motor vehicle dealers. *See* R.C. 4517.011 *et seq.* Rivian simply will be subject to that plan as a licensed dealer, just like Tesla is now. Defendant cannot seriously mean that the state has "reliance interests" in maintaining the law as is, because if that were correct every law would be *per se* rational.

Regardless, Defendant admitted in its interrogatory responses and in the 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to any such reliance interests. Ex. C at 3–4; Ex. D at 68–69, 72–74, 138–40. Ohio's "comprehensive plan" for distributing vehicles predates enactment of the Prohibition in 2014, and at the same time it created the Prohibition, the General Assembly permitted Tesla to open an *additional* dealership in the state. *See* p. 5, *supra*. Moreover, Rivian's lawsuit challenges the Prohibition only as applied to direct-sales-only automotive companies. *See* p. 6, *supra*. No independent dealer could possibly have "reliance interests tied up" in selling Rivian vehicles because there are no independent dealers of Rivian vehicles.

9

2. *The Prohibition Is Unrelated to Public Safety*

Defendant asserted that "[t]he Prohibition advances public safety." Ex. C at 3. Defendant admitted in its interrogatory responses and 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to public safety. *Id.* at 3–4; Ex. D at 68–69, 72–74, 138–40. If the direct-sales-only business model imperiled public safety, the General Assembly would not have permitted Tesla to open an *additional* dealership in Ohio. But it does not. Whether a vehicle is sold by a direct-sales-only automotive company or an independent dealer has no rational relationship to public safety. *Cf. Craigmiles*, 312 F.3d at 226 ("Even if casket selection has an effect on public health and safety, restricting the retailing of caskets to licensed funeral directors bears no rational relationship to managing that effect.").

The Prohibition does not, after all, regulate vehicle emissions or safety characteristics. Safety standards are set by the National Highway Traffic Safety Administration, and they apply no matter whether a vehicle is sold by a manufacturer or an independent dealer. *See generally* 49 U.S.C. §§ 30111 *et seq*. And there is no conceivable basis for Ohio to believe that the companies responsible for designing and manufacturing vehicles somehow know less about their operational and safety characteristics than independent dealers. *See also* Ex. A ¶¶ 11, 15 (explaining why Rivian is in the best position to educate consumers on its vehicles and provide vehicle service). Rivian's R1S and R1T have been recognized as "Top Safety Picks" by the Institute for Highway Safety every year since 2023. Ex. B at 4. And Ohio permits manufacturers to service vehicles, confirming that vehicle safety provides no basis for the Prohibition. *See* p. 5, *supra*.

3. *The Prohibition Irrationally Undermines Competition*

Defendant asserted that "[t]he Prohibition encourages competition." Ex. C at 3; *see also* R.C. 4517.011(A)(4) (stating that Chapter 4517 should be liberally construed to "maintain[] full

10

and fair competition among intra-brand and inter-brand dealers"). Defendant admitted in its interrogatory responses and 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to promoting competition. *Id.* at 3–4; Ex. D at 68–69, 72–74, 138–40. To state the obvious, there is no factual support or even rational basis for the claim that protecting an incumbent industry from competition by new market entrants somehow improves competition. *Cf. Craigmiles*, 312 F.3d at 228 ("By protecting licensed funeral directors from competition on caskets, the FDEA harms consumers in their pocketbooks."). An outright restraint on trade like the Prohibition only undermines competition.

In fact, the Prohibition reduces choice and drives up prices for consumers. Dr. Fiona Scott Morton is the Theodore Nierenberg Professor of Economics at the Yale University School of Management, the prior Chief Economist for the Antitrust Division of DOJ, and the leading expert on the economics of the U.S. automotive industry. Ex. B at 1–4. She submitted an unrebutted expert report in this matter explaining, *inter alia*, that "bans on direct sales by vehicle manufacturers harm competition"—a view that is shared by DOJ and FTC. Ex. B at 10–11; Ex. P at 5–6, 8, 14; Ex. Q at 4–8; Ex. R at 4–8; Ex. S at 4–8; Ex. T at 1–3; Ex. U at 1–2. The Prohibition gives existing dealerships a pass on having to compete with the innovations of new market entrants, to the detriment of Ohio consumers. Ex. B at 10–11. Requiring manufacturers to sell through independent dealers also leads to "double marginalization" because "the dealership adds an additional markup" on the vehicle, which "results in higher prices to consumers and lower demand." *Id.* at 12. A 2009 DOJ analysis explained that direct distribution to consumers is estimated to save consumers an average of $2,225 per vehicle (in year 2000 dollars). Ex. E at 4. A recent update of that analysis by the International Center for Law & Economics estimated that the

11

"middleman tax" is now about *$4,000 to $5,000 per vehicle*. Ex. F at 6–8. The Prohibition irrationally requires Ohio consumers to bear that enormous cost.

Proponents claim that direct-sales prohibitions foster "intrabrand" competition between independent dealers of the same line make. But intrabrand competition is over *the added dealer markup* and does not reflect a savings to consumers compared to the direct-sales business model that involves no added markup. *See* Ex. B at 14 ("Intrabrand competition among dealers will not dissipate the price difference between dealers and the direct-sales model, because the difference stems from the additional cost borne by dealers combined with their own need to make a profit.").

Regardless, "[t]he matrix of [Ohio] law … sheds much light on the disconnect between" the Prohibition and any asserted interest in intrabrand competition. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013); *cf. Craigmiles*, 312 F. 3d at 225 ("Tennessee law, however, does not require that any particular type of casket, or any casket at all, be used at burial."); *Block v. Canepa*, No. 25-3305, 2026 WL 1243383, at *9 (6th Cir. May 6, 2026) ("The Direct Ship and Transportation Restrictions cannot be essential features of a system that does not exist."). Ohio law does not, as Defendant's 30(b)(6) representative conceded, prevent manufacturers from selling their vehicles from only one dealership in the state, or from multiple dealerships all owned by the same person. Ex. D at 104–05. All Ferrari, Lamborghini, and Lotus vehicles are sold in Ohio only by a dealership in Dublin, and there is a growing consolidation of Ohio dealerships owned by the same person or even national corporations like AutoNation and Penske Automotive. *See* Ex. V.

Far from encouraging intrabrand or interbrand competition, Ohio law *limits* manufacturers' ability to establish new dealers within the same market area of an existing dealer. *See* R.C. 4517.50. And it prohibits manufacturers from (1) preventing their franchisees from acquiring another dealer of the same line-make in a contiguous market, R.C. 4517.59(A)(16); (2) objecting to the transfer

12

of a dealership even if the transferee already owns another dealership of the same or different line-make, R.C. 4517.56(E)(3); and (3) terminating or refusing to renew a franchise in such circumstances, R.C. 4517.55(B)(2). It is eyebrow raising, to say the least, for Ohio to assert an interest in competition while expressly authorizing dealers to suppress it.

### 4. The Prohibition Irrationally Undermines Consumer Welfare

Notwithstanding the Prohibition's negative impact on vehicle prices, Defendant asserted that "[t]he Prohibition advances … consumer welfare" and also that it "insulates consumers against manufacturer failure or insolvency." Ex. C at 3; *see also* R.C. 4517.011(A)(2), (A)(5). Defendant admitted in its interrogatory responses and 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to these interests. *Id.* at 3–4; Ex. D at 68–69, 72–74, 138–40. Common sense suggests that if independent dealers were actually good for consumers, those dealers would not need to spend millions of dollars lobbying states to pass legislation forcing consumers to purchase from them.

Defendant's contention that the Prohibition advances consumer welfare, even as it drives up prices through inefficiencies and double-marginalization, is at odds with reality. To the extent this interest encompasses the provision of services to consumers—such as vehicle trade-ins, financing options, and assistance with registration and titling—that is entirely disconnected from the Prohibition. Whether a dealer is affiliated with a manufacturer has nothing to do with the provision of these services. As Dr. Scott Morton explained, there is no reason "a franchised dealer will have a greater ability to offer numerous levels of service than will manufacturers." *Id.* at 24. Defendant's 30(b)(6) representative likewise testified that there is no reason a manufacturer could not help a customer with vehicle registration and titling, just like an independent dealer. Ex. D at 67. Rivian can and does offer trade-ins, financing, and assistance with vehicle registration and titling to Ohio consumers. Ex. A ¶ at 13. And unlike independent franchised dealers, Rivian does

13

not attempt to profit from such ancillary services. *See id.* ¶ 13. Once again, the Prohibition leaves consumers worse off.

Moreover, Tesla's presence in Ohio dispels any suggestion that consumers somehow suffer when they have the option to purchase a car straight from the manufacturer. Dr. Scott Morton explained that, "[i]f anything, vertical integration will allow a car manufacturer to provide enhanced levels of service that franchised dealers cannot provide." Ex. B at 24.

The Prohibition also is not rationally related to ensuring consumers have access to vehicle service in the event a manufacturer fails. The Prohibition relates solely to sales and not vehicle service. Rivian is *licensed* to and does perform vehicle service in Ohio. Exs. M–N; Ex. A ¶ 17. Ohio law does not require manufacturers to authorize independent dealers to play any role in vehicle service. Moreover, Plaintiff Rivian, LLC is the dealer but not the manufacturer of Rivian vehicles. Ex. A ¶ 4. Dr. Scott Morton explained that if the manufacturer were to go under, Rivian, LLC would be in the same position as independent dealers whose manufacturers have gone out of business, given that franchised dealers are necessarily reliant on their manufacturers. Ex. B at 23. Vehicle service after a manufacturer's failure depends "on the continued availability of the defunct manufacturer's vehicle parts post-bankruptcy," and "the existence of franchised dealers does not affect whether anyone will continue manufacturing vehicle parts" post-failure. *Id.* at 22.

The Prohibition actually *undermines* consumer welfare. As the DOJ and FTC have explained, "firms choose the distribution method that can bring their product to market as effectively and efficiently as possible. In the case of automobile distribution, restrictions on manufacturers' ability to choose their distribution method interfere with this process and can discourage innovation and new forms of competition." Ex. P at 3; *see also* Exs. Q–T (FTC, DOJ, and academic statements explaining why direct-sales prohibitions undermine consumer welfare).

Consumer groups like Consumer Federation of America, Consumer Action, Consumers for Auto Reliability and Safety, and the American Antitrust Institute uniformly *oppose* direct-sales prohibitions. Ex. U at 2. Many consumers detest the experience of purchasing vehicles from independent franchised dealers, but Ohio law denies them other options. *See* Ex. B at 7, 10.

5. *The Prohibition Irrationally Undermines Consumer Protection*

Defendant asserted that "[t]he Prohibition … provides a ready recourse for consumers to address recalls, repairs, and warranties," and noted that Chapter 4517 aims "to prevent fraud, unfair practices, discrimination, or other abuses." Ex. C at 3; R.C. 4517.011(A)(3). Defendant admitted in its interrogatory responses and 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to these interests. *Id.* at 3–4; Ex. D at 68–69, 72–74, 138–40.

The Prohibition is not rationally related to any consumer-protection interest. As discussed, it has absolutely nothing to do with vehicle service, including recalls, repairs, and warranty service. *See* pp. 5, 14, *supra*. And as Dr. Scott Morton's unrebutted expert report explained, "[t]here is no plausible explanation for why a vehicle manufacturer would be any more likely to engage in abusive practices than an independent dealer in light of the[] economic incentives and anti-fraud laws." Ex. B at 8; *see also* Ex. W at 1–4 (listing dozens of state and federal consumer protection laws that protect consumers against fraud and other abusive practices). "If anything, a manufacturer has a greater incentive than independent dealers to ensure the long-term growth of its brand and relationship with customers, because a manufacturer can keep a customer even if the customer moves from one geographic location to another," and there is no diffusion of accountability under the direct-sales model. Ex. B at 8; Ex. A ¶ 14.

15

Defendant's suggestion that the Prohibition prevents fraud and abuse is particularly rich given that franchised dealers have engaged in such practices. *See* Ex. X (FTC rule detailing extensive history of abusive practices by dealers and noting the industry is "at or near the top" of customer complaints); Ex. Y (FTC press release describing warning letters issued to 97 of the largest dealer groups noting fraudulent practices); *cf. St. Joseph Abbey*, 712 F.3d at 225 (rejecting similar proffered basis where "funeral homes, not independent sellers, have been the problem for consumers"). Furthermore, the Prohibition directly and irrationally undermines the state's interest in consumer protection by channeling vehicle sales to out-of-state dealers beyond the reach of Ohio law. "[B]anning sales by direct-sales manufacturers … forces consumers who want to buy from those direct-sales manufacturers to do so from out of state, where any unfair practices would be more difficult for regulators in Ohio to detect and prosecute." Ex. B at 10.

The "matrix of [Ohio] law" also underscores the disconnect between the Prohibition and consumer protection. *St. Joseph Abbey*, 712 F.3d at 226. Ohio law prohibits manufacturers from terminating dealers due to "[a] loss of trust by the franchisor absent circumstances or facts that would be a material breach of the franchise agreement and that material breach is known and ratified by the owners of the new motor vehicle dealer." R.C. 4517.55(B)(6). It prohibits manufacturers from terminating insolvent or bankrupt dealers until after a lengthy notice and hearing process. *Id.* § 4517.54(B)(1). It prohibits manufacturers from terminating dealers who have committed "[a]ny unlawful business practice" unless they have provided "written warning" and gone through the lengthy notice and hearing process. *Id.* § 4517.54(B)(2). Manufacturers cannot object to the transfer of a dealership even if they previously terminated their relationship with the transferee. *Id.* § 4517.56(E)(4). And manufacturers cannot prohibit their dealers "from charging any consumer any fee allowed to be charged by the dealer under Ohio law," *id.* § 4517.59(A)(21),

16

meaning that manufacturers have no ability to stop their dealers from tacking on a host of dubious fees—as they often do, according to the FTC, *see* Exs. X–Y.

As Dr. Scott Morton explained, Ohio law "insulate[s] poor-performing and abusive dealers and undermine[s] consumer protection." Ex. B at 9. The Prohibition protects independent franchised dealers at the expense of consumers. It is no wonder that "consumer advocacy groups, public policy centers, leading academics, and the Federal Trade Commission … have opposed bans on direct auto sales as anti-consumer and protectionist." *Id.* at ¶ 23.

6.  *The Prohibition Is Unrelated to Any Interest in Preventing Vertical Integration*

Defendant has not asserted that the Prohibition is rationally related to any interest in prohibiting vertical integration. Rivian addresses the interest here because the Fifth Circuit has held that manufacturers have the "burden … to dispel the notion that fear of vertical integration is not a *conceivable* rational basis." *Tesla, Inc. v. Louisiana Auto. Dealers Ass'n*, 113 F.4th 511, 531 (5th Cir. 2024).

Dr. Scott Morton's unrebutted expert report explains that "vertical integration can bring cost efficiencies that benefit consumers." Ex. B at 16. While "there are circumstances in which an economist would be concerned about harm to competition from vertical integration," "none of these circumstances is present when auto manufacturers, such as Rivian, sell their vehicles directly to consumers." *Id.* Indeed, "[c]ontrary to any assertion that Rivian's vertical integration harms consumers, some elements of Rivian's differentiated customer-service experience are possible precisely because of its vertical integration." *Id.* at 18. "An outright ban on vertical integration would preclude Rivian and other manufacturers from providing consumers the choice of these differentiated services, with no corresponding consumer benefit, in addition to imposing the risk of double marginalization." *Id.* In other words, there is no legitimate state interest in prohibiting

17

vertical integration writ large, because vertical integration often produces efficiencies for consumers and other benefits. While in certain unique situations vertical integration might raise concerns, those concerns categorically are not implicated by an automotive company like Rivian merely selling its own vehicles directly to consumers—just as Apple sells its iPhones and Starbucks sells its coffee.

Ohio law does not even truly prevent vertical integration. As discussed above, *see* pp. 5–6, *supra*, Ohio permits Rivian to perform nearly every activity traditionally performed by dealers, including vehicle service, selling vehicle parts and accessories, arranging financing for vehicle sales, and renting and auctioning vehicles. Ohio also permits Rivian to sell vehicles out of state to Ohio consumers which Rivian can then deliver to the consumer in Ohio. *See* p. 6, *supra*. And, of course, Ohio permits Tesla to sell an unlimited number of new vehicles in Ohio in perpetuity, belying any assertion that the direct-sales model harms competition or consumers. *See* p. 5, *supra*.

*     *     *

"The weaknesses of [Ohio's] proffered explanations" indicate that the Prohibition is "nothing more than an attempt to prevent economic competition." *Craigmiles*, 312 F.3d at 224. While the Prohibition is a raw deal for Ohio consumers, it is great for OADA and its members. But "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Id.* at 224. Ohio's "naked attempt to raise a fortress protecting the monopoly rents" that incumbent dealers "extract from consumers" through a "measure to privilege certain businessmen … cannot survive even rational basis review." *Id.* at 229.

## II. The Prohibition Violates Rivian's Equal Protection Rights

The Fourteenth Amendment's Equal Protection Clause forbids states from giving differential treatment to persons who are similarly situated unless the state has a rational basis for

18

doing so. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005). Because Ohio's Prohibition treats Rivian differently from the state's existing dealers (including but not limited to Tesla) without any rational basis, Rivian is likewise entitled to summary judgment on its equal protection claim (Count II).

### A. Rivian Is Similarly Situated to Existing Ohio Dealers

Rivian readily satisfies the threshold requirement for an equal protection claim, which requires it to demonstrate "that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). "When evaluating whether parties are similarly situated, courts should not demand exact correlation, but should instead seek relevant similarity." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864–65 (6th Cir. 2012) (quotation marks omitted).

Rivian is similarly situated to Ohio's existing dealers but for the challenged classification. Plaintiff Rivian, LLC is an auto dealer, selling Rivian vehicles in states where it is licensed. *See* Ex. A ¶ 10. Rivian, LLC thus engages in the exact same business—selling vehicles—as Ohio's existing dealers, and its business model is even the same as Tesla's.

### B. Ohio's Disparate Treatment of Rivian Lacks a Rational Basis

The rational-basis inquiry for purposes of an equal protection claim parallels that for the due process claim. *See Craigmiles*, 312 F.3d at 223; *Tiwari*, 26 F.4th at 361 ("All laws, whether the challenge arises under the Due Process or Equal Protection Clause, must satisfy rational-basis review, and as a result we look to cases resolved in this area under both Clauses."). As discussed, Ohio's Prohibition bears no rational relation to any legitimate state interest. *See* pp. 7–18, *supra*. Defendant has twice conceded that it is not aware of any facts suggesting that the Prohibition is rationally related to any legitimate state interest. *See* p. 8, *supra*. The fact that, at the same time it

19

enacted the Prohibition, Ohio exempted Tesla and authorized it to open an *additional* dealership underscores the utter irrationality of the Prohibition. *See* p. 5, *supra*.

"Finding no rational relationship to any of the articulated purposes of the state, we are left with the more obvious illegitimate purpose to which [Prohibition] is very well tailored. The [Prohibition] imposes a significant barrier to competition" in the market for selling motor vehicles to line the pockets of the state's powerful dealer lobby. *Craigmiles*, 312 F.3d at 228. Because bare economic protectionism is not a legitimate state interest, the Prohibition is invalid and provides no basis to prevent Rivian from selling its vehicles in Ohio.

## III. The Laches Doctrine Does Not Bar Relief

Finally, Rivian notes that the doctrine of laches does not bar relief in this case, contrary to Defendant's affirmative defense. The doctrine of laches "'does not prevent plaintiff[s] from obtaining injunctive relief'" against invalid laws that work an ongoing constitutional violation. *Ohio A. Philip Randolph Inst. v. Smith*, 335 F. Supp. 3d 988, 1002 (S.D. Ohio 2018) (collecting cases). Moreover, laches requires defendants to prove that "(1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay." *Id.* (quotation marks omitted). Rivian did not even begin selling vehicles until 2021, and it is understandable that initial efforts to open dealerships were focused on the states with statutes permitting it to be licensed as a dealer. *See* Ex. ¶ A at 6. Defendant also has conceded that there are no facts indicating prejudice. *See* Ex. C at 9.

## CONCLUSION

For the foregoing reasons, the Court should grant Rivian's motion for summary judgment, declare the Prohibition unconstitutional as applied to Rivian, and enter a permanent injunction prohibiting Defendant from enforcing the Prohibition against Rivian.

20

Date: May 29, 2026

Billy M. Donley*
William P. Geise*
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
Tel.: (713) 751-1600
bdonley@bakerlaw.com
wgeise@bakerlaw.com

\* Admitted *pro hac vice*

Respectfully submitted,

*/s/ Patrick T. Lewis*

Patrick T. Lewis (0078314) (*Trial Attorney*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel.: (216) 621-0200 / Fax: (216) 696-0740
plewis@bakerlaw.com

Andrew M. Grossman*
Kristin A. Shapiro*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Tel.: (202) 816-1697
agrossman@bakerlaw.com
kshapiro@bakerlaw.com

*Counsel for Plaintiff, Rivian LLC*

21

## CERTIFICATE OF SERVICE

I certify that on May 29, 2026, true and correct copies of the foregoing were served on the

following via ECF:

Philip D. Williamson, Esq.
Anne M. McClellan, Esq.
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
pwilliamson@taftlaw.com
amcclellan@taftlaw.com

David C. Roper, Esq.
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215
droper@taftlaw.com

*Counsel for Defendant, Charles L. Norman*

*/s/ Patrick T. Lewis*
Patrick T. Lewis (0078314)
*Counsel for Plaintiff, Rivian LLC*

22

## INDEX OF EXHIBITS

*The following exhibits are attached to the Declaration of Patrick T. Lewis In Support of Rivian LLC's Motion for Summary Judgment, filed simultaneously herewith:*

| | |
|---|---|
| Declaration of Zach Sullivan | Exhibit A |
| Expert Report of Dr. Fiona Scott Morton | Exhibit B |
| Defendant's Second Set of Supplemental Responses and Objections | Exhibit C |
| Rule 30(B)(6) Deposition Transcript of Kathleen Corrigan as Agency Representative of the Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles | Exhibit D |
| Competition Advocacy Paper published by the U.S. Department of Justice, titled "Economic Effects of State Bans on Direct Manufacturer Salers to Cary Buyers" | Exhibit E |
| Issue Brief published by the International Center for Law & Economics titled "The Middleman Tax on Car Buyers: How Dealer Franchise Laws Raise Vehicle Prices" | Exhibit F |
| Ohio Legislative Service Commission's Final Bill Analysis of Senate Bill 260 | Exhibit G |
| Ohio Legislative Service Commission's Bill Analysis of Senate Bill 260 | Exhibit H |
| Legislative History Materials Regarding Senate Bill 260 From the Ohio House of Representatives' Policy and Legislative Oversight Committee | Exhibit I |
| Article published by Jalopnik entitled "Ohio Senator Behind New Anti-Tesla Bill Gets Paid Real Good by Dealers" | Exhibit J |
| Fiscal Note & Local Impact Statement for Senate Bill 260 Published by the Ohio Legislative Service Commission | Exhibit K |
| Certificate of Registration from the Ohio Board of Motor Vehicle Repair for Rivian, LLC | Exhibit L |
| Certificate of Registration from the Ohio Board of Motor Vehicle Repair for Rivian, LLC | Exhibit M |
| Certificate of Registration from the Ohio Board of Motor Vehicle Repair for Rivian LLC | Exhibit N |

1

| | |
|---|---|
| Plaintiff's Notice of Deposition of Defendant pursuant to Fed. R. Civ. P. 30(b)(6) | Exhibit O |
| Joint Letter of the Antitrust Division of the U.S. Department of Justice and the Federal Trade Commission on Franchised Dealer Requirements to Sell and Service Motor Vehicles and Nebraska Legislative Bill 51 | Exhibit P |
| Staff Letter from the Federal Trade Commission Regarding Missouri House Bill 1124 | Exhibit Q |
| Staff Letter from The Federal Trade Commission Regarding New Jersey Bills Related to the Sale of Automobiles | Exhibit R |
| Staff Letter from The Federal Trade Commission Regarding Michigan Senate Bill 268 | Exhibit S |
| Article published by the Federal Trade Commission titled "Direct-to-Consumer Auto Sales: It's Not Just About Tesla" | Exhibit T |
| Letter titled "Open Letter by Academics in Favor of Direct EV Sales and Service" | Exhibit U |
| BMV Ohio Dealer List | Exhibit V |
| Ohio Consumer Protection Laws webpage on the website of the Ohio Attorney General | Exhibit W |
| Federal Trade Commission final rule titled "Combating Auto Retail Scams Trade Regulation Rule" | Exhibit X |
| Press Release published by the Federal Trade Commission, titled "FTC Warns 97 Auto Dealership Groups About Deceptive Pricing" | Exhibit Y |

2