IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RIVIAN, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No.: 2:25-cv-00858-MHW-CMV |
| | : | |
| | : | Judge Michael H. Watson |
| v. | : | Magistrate Judge Chelsea M. Vascura |
| | : | |
| | : | DEFENDANT'S MOTION FOR |
| CHARLES L. NORMAN, in his | : | SUMMARY JUDGMENT |
| official capacity as the Registrar of | : | |
| Motor Vehicles of the Ohio Bureau | : | |
| of Motor Vehicles, | : | |
| | : | |
| Defendant. | : | |

Defendant Charles L. Norman, in his official capacity as the Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles, hereby moves under Fed. R. Civ. P. 56 for summary judgment, and respectfully requests that the Court enter judgment in his favor on all claims asserted by Plaintiff Rivian LLC.

Summary judgment is appropriate because there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law. Ohio Rev. Code 4517.12 is rationally related to legitimate state interests and falls well within Ohio's authority to regulate the motor vehicle industry. Plaintiff has failed to produce evidence of any constitutional violation or to overcome the statute's presumption of validity.

Accordingly, because Plaintiff's claims reflect policy disagreement rather than constitutional violations, the Court should grant this Motion and enter judgment in Defendant's favor.

Respectfully submitted,

*/s/ Philip D. Williamson*
Philip D. Williamson (0097174)
Anne M. McClellan (0098922)
TAFT STETTINIUS & HOLLISTER LLP
301 E. 4th Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
pwilliamson@taftlaw.com
amcclellan@taftlaw.com

David C. Roper (0099782)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215
Phone: (614) 221-2838
Fax: (614) 221-2007
droper@taftlaw.com

*Attorneys for Defendant Charles L. Norman*

2

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Rivian, LLC, seeks through litigation something that should be left to lobbying and legislation. Rivian challenges the constitutionality of Ohio Rev. Code 4517.12(A)(11), part of Ohio's system for regulating motor vehicle sales and service. Ohio channels motor vehicle retail sales through licensed dealerships, and section 4517.12(A)(11) forbids any motor vehicle manufacturer from obtaining a dealer license.[1] The result is that most vehicles sold in Ohio are sold through independent franchised dealers—as they have been for the better part of a century.

Ohio has a comprehensive statutory framework for motor vehicle sales, contained in Chapter 4517 of the Ohio Revised Code. That chapter—in its entirety, and not just the section Rivian wants to isolate—reflects policy choices made by the Ohio General Assembly about the structure and regulation of the motor vehicle market. Ohioans were free to adopt the model they chose (through their elected representatives), and remain free to revise and amend it as they see fit. Rivian, for its part, is free to lobby the Ohio General Assembly to change the law. Indeed, Rivian could even propose a new statute directly to Ohioans through Ohio's generous referendum provisions. See Ohio Const. art. II, § 1b.

Rivian would prefer a different model for selling cars. Rivian wishes to sell vehicles directly to Ohio consumers from its own dealerships, rather than use the

---

[1] Rivian refers to this as the "Direct-Sales Prohibition." While that label is not entirely accurate, Mr. Norman will use that shorthand for the Court and opposing counsel's convenience.

3

franchise model. And Rivian would prefer a different model for changing Ohio law. Rivian seeks through litigation what it could and should seek through lobbying and legislation. And Rivian's lawsuit completely cuts the people of Ohio out of the conversation: A California auto manufacturer has asked a federal district court to invalidate an Ohio statute, skipping over the Ohio General Assembly, the Ohio judiciary (which is also elected by Ohioans), and Ohioans themselves (who may—and frequently do—amend laws through referendum).

Rivian brought a Due Process clause challenge to Ohio's statutes, but its complaint is about the *outcome* of the legislative process, not the process itself. And Rivian raised an Equal Protection challenge to a law for creating an "arbitrary" classification that is little more than "those who wish to comply with the law and those who would prefer not to." The Constitution does not empower federal courts to second-guess economic regulations simply because a private party disagrees with them or would prefer a different market structure. Put another way: Rivian's preferences cannot be converted into a constitutional mandate.

Rivian admits, as it must, that section 4517.12(A)(11) is subject to rational basis review. And under that deferential standard, the statute must be upheld as long as "any plausible reason" exists for the law—even if that plausible reason did not actually motivate the legislature. *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022). Here, the Court does not have to resort to courtroom speculation (though courtroom speculation will do), because the Ohio General Assembly articulated its interests in regulating motor vehicle sales. *See* Ohio Rev. Code 4517.011.

4

Rivian's claims rest on legal conclusions and policy disagreements, not facts capable of overcoming the presumption of constitutionality that applies to economic regulation. Because section 4517.12 is supported by a rational basis, Rivian's constitutional challenges fail as a matter of law. Mr. Norman is therefore entitled to judgment in his favor.

STATEMENT OF UNDISPUTED MATERIAL FACTS

I.    **Ohio maintains a comprehensive regulatory framework for motor vehicle sales.**

The relevant facts are few and straightforward. Begin with the statutory framework that Rivian wants to upend. Ohio regulates the sale of motor vehicles through a comprehensive statutory licensing framework set forth in Chapter 4517 of the Ohio Revised Code. The Ohio General Assembly found that the distribution and sale of motor vehicles "vitally affects commerce, the economy, and the public interest, welfare, and safety"—points Rivian would no doubt agree with. Ohio Rev. Code 4517.011(A). And so to promote the state's interests, the General Assembly said, Chapter 4517 should be "liberally construed to ensure a sound system for distributing and selling motor vehicles." *Id.* And the General Assembly stated its goals in Chapter 4517:

> (1) Enforcing the comprehensive and uniform framework for licensing and regulating manufacturers, distributors, wholesalers, and dealers of motor vehicles;
>
> (2) Promoting the right of the public to post-sale mechanical and operational services between the buyer and seller that are necessary to ensure the safe operating condition of a motor vehicle and are expected and implied at the time of sale;

5

(3) Enforcing Chapter 4517 of the Revised Code as to other persons to provide for compliance with the manufacturer's warranties and to prevent fraud, unfair practices, discrimination, or other abuses;

(4) Maintaining full and fair competition among intra-brand and inter-brand dealers;

(5) Maintaining strong and sound dealerships in order to provide continuing and necessary reliable services to the citizens of this state and to provide stable employment to the citizens of this state.

Ohio Rev. Code 4517.011(A)(1)-(5). And in order to achieve those interests, the General Assembly explained that the distribution of motor vehicles was a matter of statewide interest requiring a uniform, statewide regulatory framework. Ohio Rev. Code 4517.011(B).

Ohio channels the business of selling and leasing motor vehicles through licensed dealers.[2] Ohio Rev. Code 4517.02(A). The chapter covers the full gamut of motor vehicle sales: new cars (4517.02(A)(1)), used cars (4517.02(A)(2)), adaptive mobility vehicles (4517.02(A)(8)). It covers sales (4517.02(A)(1)-(2)), leasing (4517.02(A)(3)), auctioning (4517.02(A)(4)), distributing (4517.02(A)(5)), and even turning "casual sales" into a business (4517.02(A)(6)). The Chapter includes detailed place-of-business requirements for dealers: a dealership must have space to display at least one vehicle under a roof, and new vehicle and mobility vehicle dealerships must have facilities to inspect and repair at least one vehicle. Ohio Rev. Code 4517.03.

---

[2] Chapter 4517 distinguishes the business of motor vehicle sales from a "casual sale," which is the one-off sale of a vehicle by a non-dealer or non-manufacturer. Ohio Rev. Code 4517.01(O).

Chapter 4517 also sets out the eligibility requirements for dealer licenses. The registrar of motor vehicles must deny a license to anyone who lied on an application, failed to comply with any section of Chapter 4517, committed certain crimes, has a bad business reputation, is not financially stable, does not have an established place of business to sell cars, had a license revoked or application denied the prior year, or sold new motor vehicles without receiving authority from the manufacturer to make warranty repairs on the vehicle. Ohio Rev. Code 4517.12(A). In 2014, Ohio added another eligibility requirement: No manufacturer (or parent, subsidiary, or affiliate of one) can obtain a dealer license. Ohio Rev. Code 4517.12(A)(11).

The 2014 amendment contains one grandfathering clause: Any manufacturer that was selling its vehicles from an established place of business before January 1, 2014, and obtained a dealer license before September 4, 2014, (the effective date of the statute) could keep its license and operate no more than three dealerships, *so long as* that manufacturer did not sell its business or change the category of vehicles it produced.

## II.   Rivian prefers to use a direct-sales or wholly-owned dealer model for vehicle sales.

Plaintiff Rivian, LLC is an automotive company founded in 2009 that sells electric vehicles directly to consumers. Its subsidiary, Rivian Automotive, LLC, develops, designs, and manufactures those vehicles. Rivian launched its first motor vehicle in 2021. To distribute its products, Rivian does not utilize the traditional model of independently franchised dealerships. Instead, it sells vehicles through its own network of Rivian-operated dealers.

7

Because Rivian's affiliated entity manufactures motor vehicles (Rivian Automotive), Rivian is not eligible for a dealer license under Ohio law and therefore cannot engage in direct-to-consumer vehicle sales from licensed locations in Ohio. However, Ohio law does not prohibit Plaintiff from selling vehicles to Ohio consumers through out-of-state transactions, nor does it prevent Ohio residents from registering and operating Plaintiff's vehicles within the State.

## LAW AND ARGUMENT

I.  **Ohio's Direct-Sales Prohibition is reviewed for a rational basis under both the Due Process and Equal Protection Clauses.**

Rivian challenges section 4517.12(A)(11) under both the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. The statute neither burdens a fundamental right nor discriminates against a protected class. Rather, Chapter 4517 is ordinary economic legislation; economic regulations "carry a presumption of legislative validity" and are subject to rational basis review. *Tiwari*, 26 F.4th at 361.

Rational basis challenges are typically resolved at summary judgment, because the question is a legal one: whether any conceivable rational basis supports the statute. *Tiwari*, 26 F.4th at 369. Legislative choices are not subject to courtroom fact-finding. *Id.* Instead, Rivian's claims fail as a matter of law if there is "any plausible reason" for the statute. *Tiwari*, 26 F.4th at 361; *FCC v. Beach Commc'ns,* 508 U.S. 307, 315 (1993). "Rational speculation unsupported by evidence or empirical data" will do; indeed, even an "incorrigibly foolish" law can still be constitutional.

*Tiwari*, 26 F.4th at 361. Rivian bears the heavy burden of showing that the law is on "utterly illogical grounds" or "fantasy premises." Chapter 4517 clears that bar.

## II. Rivian's claims fail because Ohio's Direct-Sales Prohibition is rationally related to many government interests.

### A. Rivian's claims illustrate why economic regulations are subject to deferential review.

Rivian first challenges section 4517.12 as violating the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of life, liberty, or property without due process of law. U.S. Const. amend. XIV § 1. Rivian contends that Ohio Rev. Code 4517.12 infringes its right to pursue a lawful business by prohibiting direct-to-consumer vehicle sales in Ohio and asserts that the statute serves no legitimate governmental purpose. Rivian does not challenge the legislative process in Ohio, aside from a few sideways glances at the Ohio Auto Dealers Association in the Complaint.[3] Nor has Rivian been deprived of the right to sell motor vehicles to Ohioans—as its own sales records show. (Pl.'s Answer to Def.'s Second Set of Interrogatories No. 4, Exhibit 1.) (exempting the exhibited section of Rivian's interrogatory response from any confidentiality designation). So, Rivian's complaint begins in an odd place: Ohio did not "deprive" Rivian of life, liberty, or property. Indeed, Ohio has not even shut Rivian out of the automotive market in Ohio. And even if it had, Ohio did not act "without due process of law." Rather, Rivian would

---

[3] Rivian complains that the OADA is a "politically powerful special interest group" that lobbied for the direct-to-consumer sales ban. (Complaint, R. 1 ¶¶18-19, at PageID #6.) But that seems to be little more than a pejorative term for a trade association or "constituent I disagree with."

prefer to sell cars in a manner different from Ohio's statutory framework. That is not a constitutional violation.

Rivian also challenges section 4517.12 as violating the Equal Protection Clause of the Fourteenth Amendment. But like the Due Process claim, the Equal Protection claim is a poor fit for the constitutional text. Neither Chapter 4517.12 nor Rivian's complaint implicate the "protection of the laws." Nor does the Direct-Sales Prohibition trigger any heightened scrutiny; the statute neither burdens a fundamental right nor targets a suspect class. Instead, Rivian alleges that the Direct-Sales Prohibition creates an "arbitrary classification." (Complaint, R. 1, ¶ 48, at PageID #16.) But that allegation assumes what Rivian must prove. A classification is unconstitutional *only if* there is no rational basis for the classification. *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).

### B.     Ohio's Direct-Sales Prohibition satisfies rational basis scrutiny.

Ohio's scheme is ordinary economic regulation, subject to rational basis review. *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012). And the direct-to-consumer sales ban passes rational basis, not least because the Ohio General Assembly articulated several legitimate government interests to support its dealer licensing regime.

### 1.     Ohio has a legitimate interest in maintaining a licensing regime in a heavily regulated industry.

First, the General Assembly set out to enforce a "comprehensive and uniform framework" for licensing and regulating dealers and manufacturers. Ohio Rev. Code 4517.011(A)(1). That alone may be sufficient; courts routinely uphold licensing laws

10

in "heavily regulated" fields. *See Tiwari*, 26 F.4th at 363 (collecting cases).[4] Indeed, a state has a legitimate interest in controlling the automobile retail market *simpliciter*, and a ban on direct sales by manufacturers "bears a reasonable relationship" to that interest. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 510 (5th Cir. 2001).

### 2. The Direct-Sales Prohibition protects consumers' access to post-sale service, repairs, and manufacturer warranties.

The Court need not rely on the breadth of the regulatory scheme alone. The General Assembly also set out to ensure that consumers can get post-sale service on their cars and enforce manufacturer warranties. Ohio Rev. Code 4517.011(A)(2)-(3). That goal is directly reflected in the dealer licensing requirements: Any would-be new car dealer must have the facilities to inspect, service, and repair at least one vehicle at a time. Ohio Rev. Code 4517.03(B)(1)(a). The registrar of motor vehicles must *deny* a license to anyone who sold a new motor vehicle without first getting written authorization from the manufacturer or distributor to perform repairs under the manufacturer's or distributor's warranty. Ohio Rev. Code 4517.12(A)(4). This well-established system provides a reliable way for Ohioans to seek certified motor vehicle repairs, including recall-initiated repairs.

Section (A)(11) strengthens that interest by separating the manufacturer and the dealer who would perform repairs. Suppose a manufacturer was completely

---

[4] The Court cites to *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 490 (1955) (eyeglasses); *N.D. State Bd. of Pharmacy v. Snyder's Drug Stores Inc.*, 414 U.S. 156, 158, 164–67 (1973) (pharmacies); *Dent v. West Virginia*, 129 U.S. 114, 122 (1889) (physicians); *New Orleans v. Dukes*, 427 U.S. 297, 303–06 (1976) (per curiam) (street vendors); *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284–88 (2d Cir. 2015) (dentistry); *Powers v. Harris*, 379 F.3d 1208, 1211 (10th Cir. 2004) (casket sales)).

11

vertically integrated: the manufacturer produced the car, sold through corporate-owned dealerships, and performed repairs (warranty and otherwise) through those dealerships. If the manufacturer goes out of business, then the entire chain collapses and drivers have no recourse for repairs. By separating the manufacturer and the dealer performing repairs, Ohio set out to shield consumers from a manufacturer's collapse.[5]

### 3. The Direct-Sales Prohibition advances the state's interests in consumer protection.

The General Assembly also set out to prevent "fraud, unfair practices, discrimination, or other abuses." Ohio Rev. Code 4517.011(A)(3). And as the Fifth Circuit held twenty-five years ago—and restated less than two years ago—that is undoubtedly a legitimate state interest. *Tesla, Inc. v. La. Auto. Dealers Ass'n,* 113 F.4th 511, 531 (5th Cir. 2024) (quoting *Ford Motor Co.,* 264 F.3d at 503). And as the Fifth Circuit twice reiterated, regulations like Ohio's Direct-Sales Prohibition prevent manufacturers from vertically integrating and thereby harming their consumers. *Id.*

The Direct-Sales Prohibition also ensures that any entity selling cars in Ohio has a presence in the state. And as such, the statute ensures that bad actors can be regulated and punished by the state.

---

[5] As Saab, Oldsmobile, and Fisker have all demonstrated in the last 25 years, it is certainly conceivable that both new and well-established auto manufacturers can go out of business while their cars are still on the road.

12

### 4.    The Direct-Sales Prohibition protects competition.

Next, the General Assembly identified its interest in "maintaining full and fair competition among intra-brand and inter-brand dealers." Ohio Rev. Code 4517.011(A)(4). There can be little doubt that a state has a legitimate interest in protecting competition. See generally 15 U.S.C. § 1 *et seq.* A state can reasonably conclude, for example, that vertical integration will harm competition by allowing manufacturers to take advantage of their market position to the detriment of dealers and customers. *Tesla*, 113 F.4th at 531.

### 5.    The Direct-Sales Prohibition protects strong dealer networks and strengthens the Ohio economy.

Finally, Ohio set out to maintain a strong dealer network to serve and employ citizens of the state. Ohio Rev. Code 4517.011(A)(5). This is a classic governmental interest for economic regulation. Among other things, the direct-to-consumer sales ban prevents manufacturers from entering the state to compete directly with their own franchised dealers. The alternative would allow vertical monopolies and the destruction of the competitive network of dealers.

Auto dealers employ thousands of Ohioans. They are integral parts of their communities—from sponsoring little league baseball teams, to the "Hit Me" sign at Great American Ball Park, to the United States Senate. Ultimately, Ohioans prefer to buy their cars from auto dealers—as opposed to auto manufacturers—which is why their elected representatives enacted Chapter 4517. Rivian asks the Court to upend the system Ohioans have chosen just because, in its view, it can sell its cars from

13

California just as well as neighborhood auto dealers serve their respective communities.

### C. Rivian cannot show that the Direct-Sales Prohibition is irrational or unrelated to legitimate government interests.

Rivian may argue that there are better ways to advance the state's interests. Rivian may even present evidence that Ohioans would be better off if it were allowed to circumvent the direct-to-consumer sales ban. But rational basis does not demand that the legislature choose "the only way, the best way, or even the most defensible way" to advance its interests. *Gore v. Lee*, 107 F.4th 548, 561 (6th Cir. 2024). Rather, rational basis review assumes—and permits—the democratic process to continually improve the law where improvement is needed. *Beach Commc'ns*, 508 U.S. at 314.

Nor can Rivian negate the General Assembly's legitimate objectives with a single expert's view of the Ohio motor vehicle market. Indeed, courts cannot defer to the views of one person when it comes to evaluating the rationality of a state's regulation of a complex market. *See Tiwari*, 26 F.4th at 367. At its core, Rivian seeks to use this Court to obtain through litigation what it has not pursued through the democratic process. The policy embodied in Chapter 4517 reflects legislative judgment, balancing economic, consumer protection, and market structure considerations within Ohio's borders. If Rivian believes these policy choices should be different, its recourse lies with the Ohio General Assembly—or the people of Ohio themselves through a referendum—not the federal courts. Yet there is no indication that Rivian has meaningfully participated in Ohio's legislative process or attempted to secure a change in the law through ordinary political channels. Rivian's

14

dissatisfaction with Ohio's regulatory framework does not transform a policy dispute into a constitutional violation, nor does it justify judicial intervention in matters committed to the political branches. *Beach Commc'ns*, 508 U.S. at 314.

### D. Rivian cannot show that the classifications in the Direct-Sales Prohibition are irrational or arbitrary.

Plaintiff takes issue with the statute's grandfathering provision, which, as a practical matter, allows Tesla to continue to operate the dealerships it had opened or planned when the statute went into effect. Ohio Rev. Code 4517.12(A)(11)(a). But the grandfathering provision is hardly a "Tesla-specific carve out" (as Rivian decries it). The proviso that the direct sales ban would not apply to licenses granted prior to September 4, 2014, simply recognizes Ohio's longstanding presumption of prospective legislation. Ohio Rev. Code 1.48.

Rivian argues through footnote 1 of its Complaint that the General Assembly's presumption of prospectivity is itself grounds for an Equal Protection claim. This makes no sense in our constitutional order. A state legislature must retain the ability to correct a mistake or eliminate a problem it did not previously anticipate. By the same token, a state legislature cannot be foreclosed from banning disfavored conduct initiated *after* the passage of a statutory scheme just because certain parties must be allowed to continue the same conduct that predated the legislation. Far from a constitutional violation, Ohio's grandfathering provision "is consistent with the distinction the law often makes between actions previously taken and those yet to come." *Armour*, 566 U.S. at 684.

15

The "Tesla carveout" included a standard grandfathering limitation: That exemption ends if the manufacturer sells its operations, or it produces anything other than an all-electric motor vehicle. This is consistent with the most familiar types of grandfathering: an amendment statute will not apply to grandfathered entities *as long as* they continue the grandfathered activity. *See State ex rel. Clark v. Brown*, 205 N.E.2d 377, 380–82 (Ohio 1965). But any material change will subject them to the amended statute. Building and zoning regulations apply this principle all the time—any change in an allowable nonconforming use spells the end of the building code exemption and the application of the code requirements.

Grandfathering provisions reflect a practical necessity of governance: legislatures must be able to adjust regulatory regimes over time without disrupting settled expectations or invalidating existing arrangements. Prohibiting this type of transitional line-drawing would effectively lock legislatures into past policy choices, transforming the States' role as "laboratories of democracy" into a one-way ratchet—one in which policies may be adopted but not meaningfully revised. Without the ability to grandfather existing entities while restricting future conduct, legislatures would be unable to respond to experience, address unforeseen consequences, or halt policy outcomes they later determine to be undesirable.

Rational basis review accommodates this kind of incremental policymaking. *See Armour*, 566 U.S. at 684. The Constitution does not require legislatures to unwind prior arrangements or impose perfect uniformity. *See United States v. Skrmetti*, 605 U.S. 495, 524 (2025) (quoting *Lindsley v. Nat. Carbonic Gas Co.,* 220

16

U.S. 61, 78 (1911)). Instead, it permits reasonable distinctions that reflect the practical realities of governance.

Because Plaintiff cannot negate every conceivable rational basis for the statute's classifications, no reasonable factfinder could conclude that Ohio Rev. Code 4517.12 violates the Equal Protection Clause. Defendant is therefore entitled to judgment as a matter of law on Plaintiff's equal protection claim.

## CONCLUSION

Ohioans, through their elected representatives, built a statutory framework for motor vehicle sales. That framework is reasonably related to permissible government ends. The people of Ohio remain free to change the system—and Rivian is welcome to try to persuade them. But the Constitution does not authorize Rivian or this Court to force a change on Ohio. The Court should instead enter summary judgment in favor of Mr. Norman and the people of Ohio.

Respectfully submitted,

*/s/ Philip D. Williamson*
Philip D. Williamson (0097174)
Anne M. McClellan (0098922)
TAFT STETTINIUS & HOLLISTER LLP
301 E. 4th Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
pwilliamson@taftlaw.com
amcclellan@taftlaw.com

17

David C. Roper (0099782)
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215
Phone: (614) 221-2838
Fax: (614) 221-2007
droper@taftlaw.com

*Attorneys for Defendant Charles L. Norman*

18

## CERTIFICATE OF SERVICE

I certify that on May 29, 2026, a true and accurate copy of the foregoing was filed via the Court's CM/ECF system, which will send notice of the filing to all parties of record.

*/s/ Philip D. Williamson*
Attorney for Defendant Charles L. Norman