**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RIVIAN, LLC**, | |
| *Plaintiff*, | Case No. 2:25-cv-00858 |
| v. | Judge Michael H. Watson |
| **CHARLES L. NORMAN**, in his official capacity as the Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles, | Magistrate Judge Chelsea M. Vascura |
| *Defendant*. | **ORAL ARGUMENT REQUESTED** |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Billy M. Donley*
William P. Geise*
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
Tel.: (713) 751-1600
bdonley@bakerlaw.com
wgeise@bakerlaw.com

Patrick T. Lewis (0078314) (*Trial Attorney*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel.: (216) 621-0200 / Fax: (216) 696-0740
plewis@bakerlaw.com

Andrew M. Grossman*
Kristin A. Shapiro*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Tel.: (202) 816-1697
agrossman@bakerlaw.com
kshapiro@bakerlaw.com

* Admitted *pro hac vice*

*Counsel for Plaintiff, Rivian, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND AND STATEMENT OF MATERIAL FACTS.................................................. 3

ARGUMENT.............................................................................................................................. 5

    I.    The Prohibition Violates Rivian's Due Process and Equal Protection Rights.................... 5

      A.  The Prohibition is Subject to Rational Basis Review ......................................................... 5

      B.  The Prohibition Lacks a Rational Basis............................................................................. 6

          1. The Prohibition is Unrelated to Ohio's Interest in Maintaining a Licensing
             Regime for Motor Vehicle Sales............................................................................... 7

          2. The Prohibition is Unrelated to Ohio's Interest in Ensuring Consumers'
             Access to Vehicle Service.......................................................................................... 8

          3. The Prohibition Irrationally Undermines Consumer Protection.............................. 11

          4. The Prohibition Irrationally Undermines Competition............................................. 14

          5. The Prohibition is Unrelated to Ohio's Interest in Maintaining Strong
             Dealer Networks ....................................................................................................... 16

CONCLUSION.......................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allgeyer v. State of La.*,
   165 U.S. 578 (1897)................................................................................................6

*Am. Exp. Travel Related Servs. Co. v. Kentucky*,
   641 F.3d 685 (6th Cir. 2011) ...............................................................................5

*Berger v. City of Mayfield Heights*,
   154 F.3d 621 (6th Cir. 1998) ................................................................................6

*Block v. Canepa*,
   175 F.4th 642 (6th Cir. 2026) .............................................................................16

*Craigmiles v. Giles*,
   312 F.3d 220 (6th Cir. 2002) ..................................................................... *passim*

*Dent v. State of W.Va.*,
   129 U.S. 114 (1889)...............................................................................................6

*EJS Props., LLC v. City of Toledo*,
   698 F.3d 845 (6th Cir. 2012) ................................................................................6

*Ford Motor Co. v. Texas Dep't of Transp.*,
   264 F.3d 493 (5th Cir. 2001) ................................................................................8

*General Motors Corp. v. Romein*,
   503 U.S. 181 (1992)...............................................................................................5

*Kelly Services, Inc. v. Creative Harbor, LLC*,
   846 F.3d 857 (6th Cir. 2017) ................................................................................7

*Med Corp., Inc. v. City of Lima*,
   296 F.3d 404 (6th Cir. 2002) ................................................................................5

*Metro. Life Ins. Co. v. Ward*,
   470 U.S. 869 (1985).............................................................................................18

*Peoples Rts. Org., Inc. v. City of Columbus*,
   152 F.3d 522 (6th Cir. 1998) ................................................................................6

*Rainey v. Am. Forest & Paper Ass'n, Inc.*,
   26 F. Supp. 2d 82 (D.D.C. 1998)..........................................................................7

ii

*Ross v. Duggan*,
402 F.3d 575 (6th Cir. 2004) .........................................................................................17

*St. Joseph Abbey v. Castille*,
712 F.3d 215 (5th Cir. 2013) ...............................................................................12, 13, 16

*Tesla, Inc. v. La. Auto. Dealers Ass'n*,
113 F.4th 511 (5th Cir. 2024) ...................................................................................11, 15

*Tiwari v. Friedlander*,
26 F.4th 355 (6th Cir. 2022) ........................................................................... *passim*

*United States v. Carolene Prods.*,
304 U.S. 144 (1938).........................................................................................................17

**Statutes**

R.C. 4517.12 ..............................................................................................................4, 9

R.C. 4517.50 .................................................................................................................16

R.C. 4517.55 ............................................................................................................13, 16

R.C. 4517.56 ............................................................................................................16, 19

R.C. 4517.59 .................................................................................................................16

**Rules**

Loc. Civ. R. 7.1(b)(2)......................................................................................................1

iii

Plaintiff Rivian, LLC ("Rivian") submits this response in opposition to the Motion for Summary Judgment filed by Defendant Charles L. Norman, in his official capacity as Registrar of Motor Vehicles of the Ohio Bureau of Motor Vehicles ("Registrar"), ECF No. 30.[1] Rivian respectfully requests oral argument pursuant to Loc. Civ. R. 7.1(b)(2) because the case raises weighty constitutional questions arising out of Ohio's prohibition on manufacturer-direct sales of motor vehicles, which is an issue of significant public importance given the size of Ohio's motor vehicle market.

## INTRODUCTION

Does Ohio have a plausible reason for prohibiting Rivian from selling its motor vehicles in Ohio directly to consumers, just like Tesla sells Teslas, Goodyear sells tires, Apple sells iPhones, and countless other manufacturers directly sell their products to consumers? The answer is plainly no. As Rivian demonstrated in its summary judgment motion (ECF No. 28), Ohio's prohibition of the direct-sales-only business model for motor vehicle sales (the "Prohibition") for every automotive company but Tesla fails to advance any legitimate state interest. In fact, it irrationally undermines competition, consumer welfare, and consumer protection—costing consumers thousands of dollars more per vehicle to line the pockets of the State's dealers' lobby. Defendant's Rule 30(b)(6) agency representative even testified that *Defendant is unaware of any interest the Prohibition advances or serves*.

Defendant now argues (at 11) that Ohio has a "legitimate interest in controlling the automobile retail market *simpliciter*." In other words, Defendant maintains that Ohio can regulate the motor vehicle market simply for the sake of regulating it. That position cannot be reconciled

---

[1] Plaintiff Rivian, LLC sells vehicles and its subsidiary Rivian Automotive, LLC manufactures them. For ease of reference, this memorandum refers to both entities collectively as "Rivian."

with the Sixth Circuit's decision in *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002), which invalidated Tennessee's law requiring caskets to be sold only through licensed funeral directors, explaining that "rational basis review, while deferential, is not toothless." *Id.* at 229 (quotation marks omitted).

Defendant next contends (at 12–13) that the Prohibition ensures that motor vehicle dealers "have facilities to inspect, service, and repair" vehicles and "that any entity selling cars in Ohio has a presence in the state." But the Prohibition irrationally precludes Rivian from having a sales presence in Ohio—forcing consumers to purchase Rivian vehicles from one of Rivian's out-of-state licensed dealerships, removing those transactions from Ohio's jurisdiction. The Prohibition is separate from the law's facilities requirements, which Rivian would satisfy were it allowed to operate an in-state dealership. And the Prohibition does not regulate vehicle service. Rivian is *licensed* by the Ohio Board of Motor Vehicle Repair to repair customer vehicles and currently operates three service centers in the state.

Defendant's claim (at 13) that the Prohibition—which is an outright restraint of trade—promotes competition fares no better. In support of its summary judgment motion, Rivian submitted an unrebutted expert report by Dr. Fiona Scott Morton—the Theodore Nierenberg Professor of Economics at the Yale University School of Management, the prior Chief Economist for the Antitrust Division of the U.S. Department of Justice, and the leading expert on the economics of the U.S. automotive industry—which explained that the Prohibition undermines competition. That view is shared by the U.S. Department of Justice and the Federal Trade Commission, the two agencies responsible for enforcing federal competition law.

Lastly, Defendant asserts (at 13) that "dealers employ thousands of Ohioans" (as if Rivian would not hire employees in Ohio) and that "Ohioans prefer to buy their cars from auto dealers."

If consumers actually preferred to purchase vehicles from independent franchised dealers, dealers would not need to spend hundreds of thousands of dollars lobbying the Ohio General Assembly to pass a law forcing consumers to patronize them.

In fact, Defendant knows that there is no plausible justification for the Prohibition. As noted, Defendant's representative testified that *Defendant is unaware of any interest the Prohibition advances or serves*, and Defendant twice admitted in discovery that *it is unaware of any facts supporting the contention that the Prohibition is rationally related to the interests it now asserts*. The Ohio General Assembly knows it too, because at the same time it enacted the Prohibition, it carved out an exception for Tesla and permitted Tesla to open an *additional* dealership in Ohio—the opposite of a status quo-preserving "grandfather" provision.

While rational basis review is deferential, it cannot be satisfied with a series of non sequiturs. There is no coherent rationale for the Prohibition beyond the obvious one: "protecting a discrete interest group from economic competition," which is not a "legitimate governmental purpose." *Craigmiles*, 312 F.3d at 224. Defendant's summary judgment motion should be denied.

## BACKGROUND AND STATEMENT OF MATERIAL FACTS

Rivian's memorandum in support of its motion for summary judgment, which is being briefed concurrently with Defendant's motion for summary judgment, lays out the background of this dispute. *See* ECF No. 28 at 2–6. Rivian incorporates by reference the background and statement of material facts in that memorandum, as well as all of the exhibits cited in support of Rivian's motion for summary judgment. *See* ECF Nos. 28-1 to 28-26. To avoid repetition, this section will highlight only a few key points.

3

Rivian is an American automotive company founded in 2009. Ex. A ¶ 5.[2] Rivian has a "direct-sales-only" business model, meaning that it sells its vehicles to consumers without using any independent dealers. *Id.* ¶ 10. This enables Rivian to provide a low-pressure sales environment focused on consumer education. *Id.* ¶ 11. Rivian also directly provides customer support and vehicle service, including warranty service. *See id.* ¶ 10, 15. Rivian is currently licensed by the Ohio Board of Motor Vehicle Repair to own and operate three service centers in Ohio. *Id.* ¶ 17. Rivian also sells vehicle parts and accessories in Ohio, offers vehicle financing to Ohio consumers, and assists customers with titling and registering their vehicles in Ohio. Ex. A ¶ 18.

However, Ohio law prohibits Rivian from obtaining a motor vehicle dealer license, which is necessary to sell vehicles in Ohio. Since 2014, Ohio law provides that the Registrar "shall deny" a dealer license to anyone who is "a manufacturer, or a parent company, subsidiary, or affiliated entity of a manufacturer." R.C. 4517.12(A)(11). At the same time it prohibited manufacturer-direct motor vehicle sales, the General Assembly created a special carveout for Tesla. *See* R.C. 4517.12(A)(11)(a). An Ohio Legislative Service Commission report explained that only Tesla qualifies for the exception, which "permits Tesla to maintain the two dealerships it already operates in Ohio and to open a third in the future." Ex. K at 1; Ex. I at 8. This is not a grandfather provision, as it permitted Tesla to open an *additional* dealership, which Tesla subsequently did. Ex. D at 126.

Because of the Prohibition, Rivian does not have any dealer-licensed location in Ohio at which it can sell its vehicles. Ex. B ¶ 21. Instead, Ohio residents can order Rivian vehicles online from Rivian's out-of-state dealer-licensed locations, which Rivian then delivers to Ohioans. *Id.* ¶ 19. Over 1,800 Ohioans have done just that. *Id.* ¶ 16.

---

[2] Unless otherwise specified, all references to exhibits refer to the exhibits filed in support of Rivian's summary judgment motion. *See* ECF Nos. 28-1 to 28-26.

4

**ARGUMENT**

**I.  The Prohibition Violates Rivian's Due Process and Equal Protection Rights**

Defendant is not entitled to summary judgment on Rivian's due process and equal protection claims (Counts I and II, respectively).

**A. The Prohibition is Subject to Rational Basis Review**

Defendant concedes (at 10) that the Prohibition is subject to rational basis review. The Due Process Clause requires that economic regulation must meet the "test of due process: a legitimate legislative purpose furthered by rational means." *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) (quotation marks omitted); *see Craigmiles*, 312 F.3d at 223. And the rational-basis inquiry for purposes of an Equal Protection claim parallels that for a due process claim. *See Craigmiles*, 312 F.3d at 223; *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022) ("All laws, whether the challenge arises under the Due Process or Equal Protection Clause, must satisfy rational-basis review, and as a result we look to cases resolved in this area under both Clauses.").

Nevertheless, Defendant (at 9) contends that the Prohibition does not deprive Rivian of a protected interest because Rivian sells vehicles to Ohioans from its out-of-state licensed dealerships, implying that the Prohibition might be exempt from rational-basis review as to the Due Process Clause. But Rivian does not need to demonstrate that the Prohibition deprives it of a protected interest to prevail on a constitutional due process challenge because it is challenging a state law. *See Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688–89 (6th Cir. 2011) ("such a showing is not necessary to establish that a state law is unconstitutional"). Regardless, the Prohibition plainly deprives Rivian of its liberty interest in "the right to engage in a chosen occupation," *Tiwari*, 26 F.4th at 360, and its property interest in obtaining a "license to practice one's calling or profession," *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 411 (6th Cir.

5

2002); *see also Dent v. State of W.Va.*, 129 U.S. 114, 121 (1889); *Allgeyer v. State of La.*, 165 U.S. 578, 589 (1897). It also deprives Rivian of the "right to contract" and sell its property. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 859 (6th Cir. 2012). The Prohibition therefore is subject to rational basis review under both the Due Process and Equal Protection Clauses.

### B.  The Prohibition Lacks a Rational Basis

Rational basis review requires that laws "bear some rational relation to a legitimate state interest." *Craigmiles*, 312 F.3d at 223. While deferential, it "is not toothless." *Id.* at 229 (quotation marks omitted). *Craigmiles*, for example, invalidated as irrational a Tennessee law providing that only licensed funeral directors may sell caskets. *Id.* at 225. The Sixth Circuit also has invalidated as irrational a local lawn-care ordinance, *see Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998), and a grandfather provision for a firearms law, *see Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998). *See also Tiwari*, 26 F.4th at 362–64 (collecting cases where laws failed rational-basis scrutiny). In these cases, the Sixth Circuit invalidated laws as irrational after carefully considering and rejecting each potential asserted state interest. The same process in this case reveals that the Prohibition is likewise irrational.

Indeed, Defendant has admitted that it is unaware of any state interest furthered by the Prohibition or *any* facts suggesting that the Prohibition is rationally related to a legitimate state interest. Defendant's agency representative testified in a Rule 30(b)(6) deposition that Defendant is not "aware of any governmental interest the prohibition advances or serves," Ex. D at 53–55, 68–69; Ex. O at 1–2, nor aware of "any facts indicating that the prohibition furthers any of the purported governmental interests" identified by its counsel, Ex. D at 138–40. In response to an interrogatory asking Defendant to "identify all facts" supporting its contention that the Prohibition is rationally related to its asserted interests, Defendant likewise stated that it "is not aware of any

6

specific facts." Ex. C at 3–4.  These concessions are binding on Defendant: "Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998); *see also Kelly Services, Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 867 (6th Cir. 2017) (affirming that corporate representative's Rule 30(b)(6) deposition "testimony was binding on [the corporation]").

Defendant cannot articulate any reason why the Prohibition serves a legitimate state interest because there is none. Blocking new market entrants from Ohio's motor vehicle market, while imposing additional expense and inconvenience on consumers, plainly does not advance consumer welfare, competition, or any other legitimate interest—it does exactly the opposite. If the Prohibition actually served a legitimate state interest, the Ohio General Assembly would not have permitted Tesla to *expand* its presence in Ohio at the same time it foreclosed the direct-sales-only business model for every other automotive company.

1. *The Prohibition is Unrelated to Ohio's Interest in Maintaining a Licensing Regime for Motor Vehicle Sales*

Defendant contends (at 10–11) that Ohio has "a legitimate interest in controlling the automobile market *simpliciter*, and a ban on direct sales by manufacturers bears a reasonable relationship to that interest." (Quotation marks omitted.) Apparently, Defendant takes the position that *any* law regarding a "heavily regulated" industry is *per se* constitutional. Mem. at 10–11. Defendant cannot cite any case supporting its position because controlling precedent rejects it.

In *Craigmiles*, the Sixth Circuit invalidated as irrational Tennessee's requirement that caskets can only be sold through licensed funeral directors, even though the industry was "closely regulate[d]" through the Tennessee Funeral Directors and Embalmers Act. *See* 312 F.3d at 226. The Court explained that, apart from laws involving fundamental rights or suspect classes, "*[a]ll*

7

*other regulations* are subject to 'rational basis' review." *Id.* at 223 (emphasis added). Simply put, there's no "heavily regulated industry" exception to rational-basis review. Otherwise states could pass laws "protecting a discrete interest group from economic competition" and other irrationally arbitrary measures in countless industries, in contravention of the Due Process and Equal Protection Clauses. *Id.* at 224.

Defendant cites (at 11) *Tiwari*, but that case also contradicts its position. *Tiwari* considered whether Kentucky's certificate-of-need requirement for healthcare providers violated the Due Process and Equal Protection Clauses. 26 F.4th at 360–71. The Court explained that "[o]ur court and others have granted relief in the context of licensing laws that serve only protectionist goals and otherwise lack a rational basis." *Id.* at 363 (collecting cases). After exhaustively scrutinizing the asserted state interests, the Court upheld the Kentucky law only because "[m]easured by the general rational-basis test and the specific ways in which it has been applied, Kentucky's certificate-of-need law passes, perhaps with a low grade but with a pass all the same." *Id.*; *see also id.* at 369 ("Certificate-of-need laws teeter on the edge of rationality."). The opinion does not support Defendant's proposed exception to the rational-basis test.[3]

2. *The Prohibition is Unrelated to Ohio's Interest in Ensuring Consumers' Access to Vehicle Service*

Defendant contends (at 11–12) that Ohio has a legitimate interest in "protect[ing] consumers' access to post-sale service, repairs, and manufacturer warranties." But the Prohibition

---

[3] Defendant also cites (at 11) *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001), but that case addresses the state interest in preventing a traditional manufacturer with franchisees from unfairly competing against its own franchisees, which is inapplicable here. *See id.* at 504 ("Ford sold these vehicles through closed auctions to its dealers. Ford now selects some of these vehicles and, through the Showroom, retails the vehicles itself. With respect to these vehicles, Ford seems to remain in a superior market position to its dealers. At least, the evidence is not so one-sided as to lead this Court to believe that the proffered state interests are an excuse to discriminate against or burden interstate commerce for the benefit of local industry.").

8

bears a "logically untenable connection[] to [these] purported aims." *Tiwari*, 26 F.4th at 362. That's why Defendant repeatedly admitted that it is unaware of any facts suggesting that the Prohibition is rationally related to these interests. Ex. C at 3–4; Ex. D at 68–69, 72–74, 138–40.

Defendant notes (at 11) the irrelevant fact that Ohio's "dealer licensing requirements" provide that "[a]ny would-be new car dealer must have the facilities to inspect, service, and repair at least one vehicle at a time" and that dealers must obtain "written authorization" before selling and servicing their manufacturer's vehicles. Mem. at 11. But Rivian does not challenge any Ohio regulatory requirement applicable to licensed dealers and, just like Tesla, would comply with them were it eligible for licensing in the first place. These requirements posed no barrier to Tesla's licensure as a dealer, even though the Tesla exception only applies to the Prohibition and not to these requirements. *See* R.C. 4517.12. These dealer-licensing requirements have absolutely nothing to do with the Prohibition or this case.

Moreover, Dr. Scott Morton's unrebutted testimony explains that there is no reason "a franchised dealer will have a greater ability to offer numerous levels of service than will manufacturers." Ex. B ¶ 58. The direct-sales business model in fact promotes consumers' access to vehicle service in four ways. *Cf. Craigmiles*, 312 F.3d at 226 ("[R]estricting sales of caskets to licensed funeral directors would seem to have an adverse effect on the quality of caskets."). First, "if anything manufacturers have a greater incentive than dealers to act in customers' long-term interests because manufacturers can keep customers when they move, whereas franchised dealers likely cannot." Ex. B ¶ 68. Second, "if a customer's vehicle breaks down out-of-state, the manufacturer-owned service center has a stronger incentive to provide excellent service than does the franchised dealer who would recognize the interaction with the out-of-state customer as a one-time event." *Id.* Third, a direct-sales manufacturer has a greater incentive to cover out-of-warranty

9

service because it "gets the entire benefit of the new goodwill, and does not share it with the franchised dealer. What is more, the manufacturer can actually perform the out-of-warranty service for a lower cost when there is no franchised dealer involved." *Id.* ¶ 69. Finally, "[t]he involvement of franchised dealers may actually undermine a manufacturer's recall efforts. A study conducted by the University of Michigan found that one of the greatest barriers to compliance with vehicle safety recalls was consumer distrust of dealers." *Id.* ¶ 72. In all, Defendant's contrary position is not only unsupportable but backwards.

Defendant separately argues (at 12) that, under the direct-sales-only business model, "[i]f the manufacturer goes out of business, then the entire chain collapses and drivers have no recourse for repairs." But the Prohibition relates solely to sales and not vehicle service. In fact, Rivian is *licensed* to and does perform vehicle service in Ohio. Exs. M–N; Ex. A ¶ 17.

In any event, "dealers that primarily sell and service the cars of a particular manufacturer" almost always "go out of business (or convert to other franchises) after a manufacturer's bankruptcy"—meaning that this asserted rationale rests on "fantasy premises." *Tiwari*, 26 F.4th at 361. There are no more Oldsmobile dealers in Ohio, for example. *See* Ex. V. Moreover, Rivian, LLC is the dealer but not the manufacturer of Rivian vehicles. Ex. A ¶ 4. Dr. Scott Morton explained that if the manufacturer were to go under, Rivian, LLC would be in the same position as independent dealers whose manufacturers have gone out of business, given that franchised dealers are necessarily reliant on their manufacturers. Ex. B ¶ 54. Vehicle service after a manufacturer's failure depends "on the continued availability of the defunct manufacturer's vehicle parts post-bankruptcy," and "the existence of franchised dealers does not affect whether anyone will continue manufacturing vehicle parts" post-failure. *Id.* ¶¶ 53–54. Again, this purported interest is entirely disconnected from the Prohibition.

10

3. *The Prohibition Irrationally Undermines Consumer Protection*

Defendant contends (at 11–12) that the Prohibition "advances the state's interests in consumer protection" by preventing "fraud, unfair practices, discrimination, or other abuses." (Quotation marks omitted.) Defendant's reasons why the Prohibition prevents fraud and abuse strike with "the force of a five-week-old, unrefrigerated dead fish." *Craigmiles*, 312 F.3d at 225 (quotation marks omitted). Defendant admitted in its interrogatory responses and 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to these interests. Ex. C at 3–4; Ex. D at 68–69, 72–74, 138–40.

As an initial matter, Defendant blindly ignores that the Prohibition irrationally undermines the state's interest in consumer protection by channeling vehicle sales to out-of-state dealers beyond the reach of Ohio law. "[B]anning sales by direct-sales manufacturers … forces consumers who want to buy from those direct-sales manufacturers to do so from out of state, where any unfair practices would be more difficult for regulators in Ohio to detect and prosecute." Ex. B ¶ 23. Rather than confront that central fact, Defendant resorts to non sequiturs.

*First*, Defendant speculates (at 12) that direct-sales-only automotive companies might "harm[] their consumers."[4] How or why? Defendant never says. Dr. Scott Morton explained that "[t]here is no plausible explanation for why a vehicle manufacturer would be any more likely to engage in abusive practices than an independent dealer in light of the[] economic incentives and anti-fraud laws." Ex. B ¶ 21; *see also* Ex. W at 1–4 (listing dozens of state and federal consumer protection laws that protect consumers against fraud and other abusive practices); *cf. Craigmiles*, 312 F.3d at 226 ("[I]t is not as if casket retailers would be free to 'engage in misrepresentation or

---

[4] Defendant cites *Tesla, Inc. v. La. Auto. Dealers Ass'n*, 113 F.4th 511 (5th Cir. 2024), which held that manufacturers have the "burden … to dispel the notion that fear of vertical integration is not a *conceivable* rational basis." *Id.* at 531. Rivian has satisfied that burden. *See* p. 14, *infra*.

fraud' if not covered by the FDEA."); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 225 (5th Cir. 2013) (similar). "If anything, a manufacturer has a greater incentive than independent dealers to ensure the long-term growth of its brand and relationship with customers, because a manufacturer can keep a customer even if the customer moves from one geographic location to another," and there is no diffusion of accountability under the direct-sales model. Ex. B ¶ 21; Ex. A ¶ 14.

Defendant's suggestion that the Prohibition is necessary to prevent fraud and abuse is belied by Tesla's presence in Ohio. If the direct-sales-only business model harmed consumers, the General Assembly would not have permitted Tesla to expand its foothold in the State. Forcing consumers to purchase vehicles from independent dealers does not prevent consumer harm, it causes it.  Many consumers prefer the transparency and no-haggle pricing offered by direct-sales-only manufacturers like Rivian, but the Prohibition deprives these consumers of their preferred choice. *See* Ex. A ¶ 11; Ex. B ¶ 25. By contrast, the FTC has concluded that franchised dealers are "at or near the top" of consumer complaints. *See* Ex. X (FTC rule detailing extensive history of abusive practices by dealers); Ex. Y (FTC press release describing fraudulent practices committed by 97 of the largest dealer groups); *cf. St. Joseph Abbey*, 712 F.3d at 225 (rejecting similar proffered basis where "funeral homes, not independent sellers, have been the problem for consumers").

*Second*, Defendant asserts (at 11) that the Prohibition "ensures that any entity selling cars in Ohio has a presence in the state" and "can be regulated and punished by the state." This point makes zero sense. Rivian is bringing this suit because it wants to be an Ohio-licensed dealer, selling its motor vehicles from a location in Ohio that would be subject to and regulated by Ohio law. The Prohibition directly and irrationally undermines the state's interest in consumer protection by prohibiting it from doing so. *See* Ex. B ¶ 26.

12

*Finally*, "[t]he matrix of [Ohio] law … sheds much light on the disconnect between" the Prohibition and consumer protection by putting the economic interests of franchised dealers ahead of consumer protection. *St. Joseph Abbey*, 712 F.3d at 226; *cf. Craigmiles*, 312 F.3d at 225. Ohio law prohibits manufacturers from terminating dealers due to "[a] loss of trust by the franchisor absent circumstances or facts that would be a material breach of the franchise agreement and that material breach is known and ratified by the owners of the new motor vehicle dealer." R.C. 4517.55(B)(6). It prohibits manufacturers from terminating insolvent or bankrupt dealers until after a lengthy notice and hearing process. *Id.* § 4517.54(B)(1). It prohibits manufacturers from terminating dealers who have committed "[a]ny unlawful business practice" unless they have provided "written warning" and gone through the lengthy notice and hearing process. *Id.* § 4517.54(B)(2). Manufacturers cannot object to the transfer of a dealership even if they previously terminated their relationship with the transferee. *Id.* § 4517.56(E)(4). And manufacturers cannot prohibit their dealers "from charging any consumer any fee allowed to be charged by the dealer under Ohio law," *id.* § 4517.59(A)(21), meaning that manufacturers have no ability to stop their dealers from tacking on a host of dubious fees—as they often do, according to the FTC, *see* Exs. X–Y.

As Dr. Scott Morton explained, Ohio law "insulate[s] poor-performing and abusive dealers and undermine[s] consumer protection." Ex. B ¶ 22. The Prohibition protects independent franchised dealers at the expense of consumers. It is no wonder that "consumer advocacy groups, public policy centers, leading academics, and the Federal Trade Commission … have opposed bans on direct auto sales as anti-consumer and protectionist." *Id.* ¶ 23.

13

    4.  *The Prohibition Irrationally Undermines Competition*

Defendant contends (at 13) that the Prohibition "protects competition," yet never explains *how*. Defendant admitted in its interrogatory responses and 30(b)(6) deposition that it is unaware of any facts supporting the position that the Prohibition is rationally related to this interest. Ex. C at 3–4; Ex. D at 68–69, 72–74, 138–40.

Arbitrarily protecting an incumbent industry from competition by new market entrants does not promote competition. *Cf. Craigmiles*, 312 F.3d at 228 ("By protecting licensed funeral directors from competition on caskets, the FDEA harms consumers in their pocketbooks."). Dr. Scott Morton's unrebutted expert report explains that "bans on direct sales by vehicle manufacturers harm competition." Ex. B ¶¶ 25–29. That view is shared by DOJ and FTC. Ex. P at 5–6, 8, 14; Ex. Q at 4–8; Ex. R at 4–8; Ex. S at 4–8; Ex. T at 1–3; Ex. U at 1–2. The Prohibition gives existing dealerships a pass on having to compete with the innovations of new market entrants, to the detriment of Ohio consumers. Ex. B ¶¶ 25–29. If Rivian were allowed to sell its vehicles in Ohio, that would increase competition in Ohio's market for motor vehicles—just like Tesla's entry into the market has given Ohio consumers more options from which to choose.

What is more, requiring manufacturers to sell through independent dealers leads to "double marginalization" because "the dealership adds an additional markup" on the vehicle, which "results in higher prices to consumers and lower demand." *Id.* ¶ 30. A 2009 DOJ analysis explained that direct distribution is estimated to save consumers an average of $2,225 per vehicle (in year 2000 dollars). Ex. E at 4. A recent update of that analysis by the International Center for Law & Economics estimated that the "middleman tax" is now about *$4,000 to $5,000 per vehicle.* Ex. F at 6–8. The Prohibition irrationally requires Ohio consumers to bear that enormous cost.

14

Defendant asserts (at 13) that "[a] state can reasonably conclude … that vertical integration will harm competition." *See Tesla, Inc.*, 113 F.4th at 531 (holding that manufacturers have the "burden … to dispel the notion that fear of vertical integration is not a *conceivable* rational basis"). Defendant never says that Ohio is in fact claiming this position is a justification for the Prohibition or how Rivian's "vertical integration" might harm competition. Dr. Scott Morton's unrebutted testimony explains that "vertical integration can bring cost efficiencies that benefit consumers." Ex. B ¶ 38. "[S]ome elements of Rivian's differentiated customer-service experience are possible precisely because of its vertical integration." *Id.* ¶ 43. "An outright ban on vertical integration would preclude Rivian and other manufacturers from providing consumers the choice of these differentiated services, with no corresponding consumer benefit, in addition to imposing the risk of double marginalization." *Id.* While in certain unique situations vertical integration might raise concerns, those concerns are not implicated by an automotive company like Rivian merely selling its own vehicles directly to consumers—just as Tesla sells Teslas, Dell sells desktops, and Warby Parker sells glasses. *Id.* ¶¶ 38–40.

Defendant briefly references (at 13) the concept of "intra-brand" competition, but does not explain what it is or how it relates to the Prohibition. Intrabrand competition is "competition between dealers of the same brand of automobile." Ex. B ¶ 30. Strong intrabrand competition between dealers of the same line-make discourages those dealers from excessively marking up their vehicles over the manufacturer's invoice price. But that does not result in a savings to the consumer compared to direct sales that involve no added markup. *Id.* ¶ 33 ("Intrabrand competition among dealers will not dissipate the price difference between dealers and the direct-sales model, because the difference stems from the additional cost borne by dealers combined with their own need to make a profit.").

Regardless, "[t]he matrix of [Ohio] law" contradicts any asserted interest in intrabrand competition. *St. Joseph Abbey*, 712 F.3d at 226; *Block v. Canepa*, 175 F.4th 642, 655 (6th Cir. 2026) ("The Direct Ship and Transportation Restrictions cannot be essential features of a system that does not exist."). Ohio law does not, as Defendant's 30(b)(6) representative conceded, prevent manufacturers from selling their vehicles from only one franchised dealership in the state, or from multiple franchised dealerships all owned by the same person. Ex. D at 104–05. All Ferrari, Lamborghini, and Lotus vehicles are sold in Ohio only by a dealership in Dublin, and there is a growing consolidation of Ohio dealerships owned by the same person or even national corporations like AutoNation and Penske Automotive. *See* Ex. V.

Precisely because intrabrand competition limits their ability to add high markups, dealers have successfully lobbied the Ohio General Assembly to *limit* manufacturers' ability to establish new dealers within the same market area of an existing dealer. *See* R.C. 4517.50. Ohio law further prohibits manufacturers from (1) preventing their franchisees from acquiring another dealer of the same line-make in a contiguous market, R.C. 4517.59(A)(16); (2) objecting to the transfer of a dealership even if the transferee already owns another dealership of the same or different line-make, R.C. 4517.56(E)(3); and (3) terminating or refusing to renew a franchise in such circumstances, R.C. 4517.55(B)(2). It is eyebrow raising for Ohio to assert an interest in intrabrand competition while expressly authorizing dealers to suppress it.

5. *The Prohibition is Unrelated to Ohio's Interest in Maintaining Strong Dealer Networks*

Defendant finally contends (at 13–14) that the Prohibition promotes "strong dealer networks and strengthens the Ohio economy." To say that this "justification is very weak, indeed" is an understatement. *Craigmiles*, 312 F.3d at 228. Again, Defendant's argument is backwards: by

16

channeling vehicle sales out of state, the Prohibition irrationally undermines this asserted economic interest. This argument also fails in its particulars.

*First*, Defendant claims (at 13) that the Prohibition "prevents manufacturers from entering the state to compete directly with their own franchised dealers." But Rivian challenges the Prohibition only *as applied to direct-sales-only automotive companies like Rivian*, which have no franchised dealers. "[T]he constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation." *Ross v. Duggan*, 402 F.3d 575, 583 n.3 (6th Cir. 2004) (quotation marks omitted); *see United States v. Carolene Prods.*, 304 U.S. 144, 153–54 (1938) ("[T]he constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article … is so different from others of the class as to be without the reason for the prohibition."). Prohibiting Rivian from selling vehicles in Ohio does not further any state interest in preventing traditional manufacturers with independent dealers from competing with their own franchisees. *Cf. Craigmiles*, 312 F.3d at 228 (holding that asserted interest in preventing funeral directors from bundling their services is irrelevant because "casket retailers cannot merge goods and services … because they *only* sell caskets and other smaller items").

*Second*, Defendant notes (at 13) that franchised dealers "employ thousands of Ohioans" and are "integral parts of their community" because they do things like sponsor "Hit Me" signs at ballparks. If Rivian were permitted to sell vehicles in Ohio, it too would employ people to sell them. "Whether a dealership is owned and operated by a manufacturer or a dealer, that dealership will provide jobs and have an incentive to invest in the local community." Ex. B ¶ 48. As direct-sales-only manufacturers do not utilize franchised dealers, the Prohibition actually "prevents the creation of new jobs and salaries that would otherwise go to building and investing in stable

17

communities." *Id.* Ohio also loses "the tax revenue and economic activity associated with these jobs and sales," given that the Prohibition funnels this revenue and activity to out-of-state dealerships. *Id.*

"Nor is there any reason to believe that manufacturers are less philanthropic than franchised dealers." *Id.* ¶ 49. "Rivian dedicated 1% of its equity … to establish an independent philanthropic platform, the Rivian Foundation" and "has awarded a total of $11.3 million to initiatives in 15 U.S. states, the District of Columbia, and Puerto Rico." *Id.* Regardless, the Prohibition is unrelated to any state interest in philanthropy. Ohio law does not condition the grant of a dealership license on a dealer pledging to donate a portion of its profits back to the community. "If the goal is to encourage local philanthropy, there are many better ways than blocking efficient distribution methods to the detriment of consumers." *Id.* ¶ 50; *cf. Craigmiles*, 312 F.3d at 227 ("The Supreme Court, employing rational basis review, has been suspicious of a legislature's circuitous path to legitimate ends when a direct path is available."). There is no "economic rationale that would favor economic protectionism on the ground that some of the monopolistic rents earned from that protectionism might be invested in the community." Ex. B ¶ 50.

*Third*, Defendant suggests that "neighborhood auto dealers" are better for consumers than a "California" company. This asserted state interest is unconstitutional. "[P]romotion of domestic business by discriminating against nonresident competitors is not a legitimate state" interest for purposes of the rational-basis test. *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 882 (1985).

An additional "problem with this argument is that many dealers are now owned by large dealership conglomerates." Ex. B ¶ 46. There is a growing consolidation of Ohio dealerships owned by the same person or even national corporations like AutoNation and Penske Automotive. *See* Ex. V. Nothing in Ohio law requires auto dealers to be local small businesses. As discussed,

18

Ohio law even *prohibits* manufacturers from taking steps to prevent consolidation in their dealership networks. *See* p. 16, *supra*. It also prohibits manufacturers from objecting to the transfer of ownership of a dealership on the grounds that "prospective management personnel do not reside within the relevant market area of the affected dealership." R.C. 4517.56(E)(1).

*Finally*, Defendant argues (at 13) that "Ohioans prefer to buy their cars from auto dealers." But Rivian wants to sell its vehicles in Ohio as a *licensed dealer*, compliant with all of Ohio's dealership requirements but for the Prohibition. To the extent Defendant means to suggest that consumers prefer to buy from *independent* dealers, that unsupported claim is absurd. If consumers preferred franchised dealers, franchised dealers wouldn't need laws forcing consumers to buy from them. Nor does it explain why Consumer Federation of America, Consumer Action, and Consumers for Auto Reliability and Safety all oppose direct-sales prohibitions and not a single consumer group supports them. Ex. U at 2. Or why the FTC reports that consumers find the process of interacting with dealers to be "time-consuming and arduous" and that "[c]omplaints about motor vehicle transactions are regularly in the top ten complaint categories tracked by the FTC." Ex. Y at 593–94. Or why Tesla has not gone out of business in Ohio.

It is also strange to claim that, because some consumers might have a certain preference, states can prohibit businesses from offering consumers other options. No one would seriously contend that, because some consumers prefer Mexican restaurants, states should ban Italian restaurants. So too here. "Consumers are made better off when given the right to choose the selling mode and vehicle that they prefer, rather than having their state government choose it for them." Ex. B ¶ 29. Rivian's "alternative model is good for the consumer because it creates more choices, and some consumers may prefer the new model over traditional car buying. If consumers like this retail experience … this will put competitive pressure on traditional dealers." *Id.* ¶ 25. "If Rivian's

19

direct-sales model or its vehicles are not desired by consumers or if consumers judge Rivian's vehicle prices to be too high, Rivian's vehicles will not be purchased. This is standard and expected in a competitive market." *Id.* ¶ 27.

*   *   *

Defendant criticizes Rivian for bringing suit to vindicate its constitutional rights. In Defendant's view (at 3), Rivian should "lobby the Ohio General Assembly to change the law."[5] The Constitution does not require persons subject to unconstitutional laws to lobby the legislatures that enacted them before looking to the courts to remedy the constitutional violation.

Ohio's Prohibition violates Rivian's constitutional rights because it bears no rational relation to any legitimate state interest. Defendant has twice conceded that it is not aware of any facts suggesting that the Prohibition is rationally related to a legitimate interest. *See* pp. 9, 11, 14, *supra*. The fact that, at the same time it enacted the Prohibition, Ohio authorized Tesla to open an *additional* dealership underscores the Prohibition's utter irrationality. *See* p. 4, *supra*. "Finding no rational relationship to any of the articulated purposes of the state, we are left with the more obvious illegitimate purpose to which [Prohibition] is very well tailored": It is a "naked attempt to raise a fortress protecting the monopoly rents that [motor vehicle dealers] extract from consumers." *Craigmiles*, 312 F.3d at 228–29. "This measure to privilege certain businessmen over others at the expense of consumers … cannot survive even rational basis review." *Id.* at 229.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion for summary judgment.

---

[5] Rivian *has* undertaken various written communications, calls, and meetings with members or staff of the General Assembly. *See* Decl. of Patrick T. Lewis (June 29, 2026), Exhibit 1.

20

Date: June 29, 2026

Billy M. Donley*
William P. Geise*
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
Tel.: (713) 751-1600
bdonley@bakerlaw.com
wgeise@bakerlaw.com



* Admitted *pro hac vice*

Respectfully submitted,

*/s/ Patrick T. Lewis*
Patrick T. Lewis (0078314) (*Trial Attorney*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel.: (216) 621-0200 / Fax: (216) 696-0740
plewis@bakerlaw.com

Andrew M. Grossman*
Kristin A. Shapiro*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Tel.: (202) 816-1697
agrossman@bakerlaw.com
kshapiro@bakerlaw.com

*Counsel for Plaintiff, Rivian LLC*

## CERTIFICATE OF SERVICE

I certify that on June 29, 2026, true and correct copies of the foregoing were served on the

following via ECF:

Philip D. Williamson, Esq.
Anne M. McClellan, Esq.
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
pwilliamson@taftlaw.com
amcclellan@taftlaw.com

David C. Roper, Esq.
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215
droper@taftlaw.com

*Counsel for Defendant, Charles L. Norman*

*/s/ Patrick T. Lewis*
Patrick T. Lewis (0078314)
*Counsel for Plaintiff, Rivian, LLC*

22